UNITED STATES ex rel. LA CHARITY v.
COMMANDING OFFICER OF UNITED
STATES ARMY INDUCTION CENTER,
BUFFALO, N. Y.

No. 317.

Circuit Court of Appeals, Second Circuit.

May 1, 1944.

Klocke & Rovner, of Buffalo, N. Y.
(James O. Moore, Sr., of Buffalo, N. Y.,
of counsel), for appellant.

George L. Grobe, U. S. Atty., of Buffalo,
N. Y. (Eugene J. Donnelly, Asst. U. S.
Atty., of Buffalo, N. Y., of counsel), for
appellee.

Before L. HAND, SWAN, and AU-
GUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The relator, who was inducted into the
United States army on October 20, 1943,
and furloughed until until November 10th,
applied for a writ of habeas corpus to test
the legality of his induction. A writ was
issued on November 1, 1943, directed to the
Commanding Officer of the United States
Army Induction Center at Buffalo, New
York; a return thereto was duly filed in
behalf of the United States and a hearing
was had which resulted in an order dis-
charging the writ. From that order the
relator has appealed.

In 1940 the appellant duly registered un-
der the Selective Training and Service Act
of 1940, 50 U.S.C.A.Appendix, § 301 et seq.,
with Local Board No. 3 of Lancaster, Pa.
Originally the board classified him in III-A
as a registrant having dependents. But on
March 1, 1943, after appearing before the
board he was given a classification of I-A
and notice thereof was duly mailed to him.
He took no appeal from this classification.
Thereafter he wrote the board requesting a
reconsideration of his classification and
transmitted affidavits in support of defer-
ment on the grounds of (a) dependency

and (b) engagement in essential industry. He appeared before the Board in support of these claims April 12th. The following day he was notified by a letter that the board "after again going over your case very thoroughly has continued your classification I-A but postponed your induction for a period of 30 days from the above date." On April 16th he notified the board that he desired to appeal and to have the appeal transferred to the Appeal Board located in Buffalo, N. Y., where he resided and where the corporation of which he was president had its principal place of business. The board refused to entertain the appeal or to transfer it to the Buffalo Appeal Board on the ground that he had failed to appeal from its March 1st classification and was not entitled to appeal from its refusal on April 12th to reclassify him. The correctness of this ruling is the first question for our determination.

Appeals are governed by § 627 of the regulations. Subdivision (a) of § 627.2 gives the right to "appeal to a board of appeal from any classification of the registrant by the local board"; and subdivision (c) provides that the appeal must be taken "within ten days after the date when the local board mails to the registrant a Notice of Classification (Form 57)." Such a notice was mailed to the appellant on March 1, 1943. In his brief it is stated that no notice of I-A classification was received until April 13, 1943, but we find nothing in the record to support the statement. On the contrary his letter of March 19, 1943, requested the board to "reconsider my draft classification." It is conceivable, though unlikely, that this request referred to the classification given him on February 8, 1943, namely Class I tentative, rather than to the action of the board on March 1st. However this may be, it is enough that the record shows the mailing of the March 1st notice and does not show that the registrant failed to receive it. Whether if such a failure were proved, it could have any legal effect upon the registrant's right to appeal is a question not before us and therefore not considered. Under the regulation mailing of notice started the running of the time for appeal; consequently the appellant's time to appeal from the March 1st classification expired on March 11th.

The appellant urges that the action of the board in continuing his I-A classification after the hearing on April 12th was a new classification from which he should have been granted the right to appeal. Section 626.2 authorizes the local board to consider anew a classification previously made but no provision of the statute or the regulations has been pointed out giving a right to appeal from a reconsideration which results in no change of classification. We are satisfied that no appeal lies from such a decision. The evil of a contrary rule is obvious; if there were an appeal from every refusal to change a classification, a registrant could interminably delay his induction by successive requests and appeals, as Judge Forman pointed out in United States ex rel. Filomio v. Powell, D.C.N.J., 38 F.Supp. 183, 188. Had the board arbitrarily refused to consider the appellant's request for reclassification, it is possible that he might be entitled to judicial intervention; but no such charge is made against the board. Nor can it be said that in refusing to change the classification the board acted in so arbitrary a manner that its decision lacked all legality. On the contrary under the evidence its decision seems well justified, although the sufficiency of the evidence before the board is not a matter for judicial review. United States ex rel. Kotzen v. Local Exemption Board, D.C.S.D.N.Y., 252 F. 245, 248. Since no appeal lay from the refusal to reclassify no wrong was done the appellant by denying his request to transfer his file to the Appeal Board in Buffalo.

The next contention is that the board acted illegally in not putting the appellant in Class IV-F after he was rejected at the Induction Station at Buffalo on May 17th and July 12th, 1943. The report of his physical examination on May 17th found "Low back syndrome with limitation forward bending" and stated that he "is disqualified for military service because of limitation of quota for limited-service men for the month of May. He may be sent in with the next group." The report of the July 12th physical examination was similar. It stated that he "is physically qualified for limited military service only, by reason of low back syndrome"; also that he "is disqualified for military service because of administrative rejection limitation of quota for limited-service men." Thereafter on July 21, 1943, the local board at Buffalo returned the appellant's papers to the board at Lancaster with a letter stating: "These papers have just been returned to us by the Induction Station. Please note that this

man has been placed in Class IV-F." On August 10th the Lancaster board sent the file to Selective Service Headquarters at Harrisburg, Pa., with the request that it be reviewed. The State Director's reply read:

"The cover sheet has been rechecked and it has been determined that if this registrant was administratively rejected due to limitation of quota for limited-service men, that he be considered Class I-A(L) and processed for induction as a limited service registrant when Call is received from this Headquarters for delivery of registrants of this class."

On August 23rd the board classified him as I-A(L). He gave notice of appeal but the board refused the appeal. Thereafter he was again examined at the Induction Station at Buffalo and on October 20, 1943, was accepted and inducted into the army for general service. The district court was of the opinion that the local board's failures to place the petitioner in Class IV-F after his examinations on May 17th and July 12th were "procedural errors not prejudicial to substantive rights" and were therefore not grounds for the relief sought. We do not find this conclusion untenable [see United States ex rel. Bergdoll v. Drum, 2 Cir., 107 F.2d 897, 129 A.L.R. 1165, certiorari denied 310 U.S. 648, 60 S. Ct. 1098, 84 L.Ed. 1414], but we prefer to rest our decision on broader ground. After careful examination of the record and the regulations we cannot fairly characterize the board's actions as erroneous in any respect.

The petitioner relies heavily upon § 633.13 of the regulations:

"633.13 Classification after man is inducted or is found not acceptable. * * * (b) Upon receiving notice from the induction station that a selected man has not been accepted, the local board shall reopen his classification and classify him in Class IV-F unless, pursuant to instructions from the Director of Selective Service, he is retained in Class I-A or Class I-A-O and forwarded to another component of the armed forces."

This section, controlling the disposition of registrants after they had been selected and delivered to the military authorities, was of great importance in adjusting the operation of the Selective Service System to the needs of the armed forces. It was frequently amended. In earlier forms it directed local boards to classify registrants who had been found not acceptable by reason of physical defects, in Class I-B or Class I-B-O if they were qualified for limited military service, or in Class IV-F if they were disqualified for any service. 6 F.R. 6849; 7 F.R. 202; 7 F.R. 2092. By amendment which took effect August 18, 1942, Classes I-B and I-B-O were abolished. 7 F.R. 6517. Thereafter, effective September 2, 1942, paragraph (b) of § 633.13 was amended to the form above quoted, omitting reference to the abolished classes. 7 F.R. 6954. But apparently the system did not work smoothly without the I-B and I-B-O classifications. On April 26, 1943 the following memorandum was sent to all local boards:

"Subject: Induction of Limited Service Men.

"The following telegram has been received from National Headquarters and is referred to all local boards for their information:

" 'On April 15th the War Department wired all service commands rescinding the restriction that not more than 10% of the total registrants inducted for the army by color might be special assignment, but at the same time directed that no limited service men would be accepted for the remainder of the month of April. They have now notified this headquarters that during the month of May all *special* assignment registrants will be accepted but only 5% of those inducted on any day may be limited service.'

"Efforts are being made to establish uniform and permanent physical standards but until such time as the matter has been clarified all registrants rejected at the induction station should be classified in IV F.

"(Signed) Hershey."

Following the first examination of the petitioner, on May 17th, we think it clear that neither § 633.13 nor the memorandum gave him any right to be placed in Class IV-F. He was not "found not acceptable" in the terms of the regulation. On the contrary, he was found acceptable for limited service and the board was advised that he "may be sent in with the next group." Under these circumstances it would have been a futile and useless procedure to reclassify him in IV-F and then reclassify him in I-A so that he could be sent for induction with the next quota. The memorandum, in so far as it had directive force, did not apply to registrants in the situation of the petitioner, but to those for whom the armed forces had no pre-

dictable need, i.e., the former reserve classes I-B and I-B-O. The board chose the most reasonable and practical course open to it in retaining the petitioner in Class I-A until his second examination, there being no suggestion of new facts which might have affected his availability in the interim.

The correctness of the procedure followed after the second examination is even clearer. The petitioner was examined on July 12th and disqualified again for quota reasons. His papers were not sent to the local board in Lancaster until July 21st, so they could not have been received before that date. And effective July 15, 1943, § 633.13 was amended in toto and supplemented as follows (8 F.R. 9866):

"1. Amend § 633.13 to read as follows:

"§ 633.13 Classification when man is inducted. * * *

"2. Amend the regulations by adding a new section to be known as § 633.13-1 to read as follows:

"§ 633.13-1 Identification of man accepted for limited service but not inducted. (a) Upon receiving notice from the induction station that a selected man has been found acceptable for limited military service but is not immediately inducted, the local board will not change his classification but will identify him in all records by following his classification with the letter '(L).' Such a registrant may again be forwarded to the induction station by the local board under instructions issued by the Director of Selective Service. (b) If the local board determines there has been a change in the status of such a registrant before he is again ordered to report for induction, it will reopen such registrant's classification and classify him in the usual manner.

"3. Amend the regulations by adding a new section to be known as § 633.13-2 to read as follows:

"§ 633.13-2 Classification of man not accepted.

"(a) Upon receiving notice from the induction station that a selected man has not been accepted because he is disqualified for service in the land or naval forces, the local board shall reopen his classification and classify him in Class IV-F unless he is a man who was honorably discharged from the land or naval forces * * *."

What was done by the local board in classifying the petitioner in Class I-A(L) on August 23rd, and in refusing his appeal, complied with the letter and the spirit of this section as amended. No facts not previously considered by the board with respect to the petitioner's status were offered as a basis for reopening his classification; we are not confronted with a problem in the exercise of discretion. Compare Ex parte Stanziale, D.C.N.J., 49 F.Supp. 961, reversed 3 Cir., 138 F.2d 312, certiorari denied 320 U.S. 797, 64 S.Ct. 267; United States v. Reckord, D.C.Md., 51 F.Supp. 507. The motives of the local board are somewhat impugned by intimations of personal animosity, but the board submitted the petitioner's entire file to the State Director of Selective Service before taking its final action, and then acted in compliance with his judgment. It is not suggested that the State Director was in any way unfair.

Annexed to the relator's petition was a copy of "Operations Bulletin No. 150," issued July 26, 1943, by the New York State Headquarters "To: All local boards (Upstate)." We are not shown how this bulletin could control the Lancaster, Pa., board which had jurisdiction over the petitioner, but in any case we do not perceive its force. It sets forth certain instructions for the handling of limited service registrants at Induction Stations, promulgated by the War Department, and directs local boards to retain those rejected for quota reasons only in Class I-A with the additional designation "(L)." Then it directs the boards to reclassify any men who had been placed in Class IV-F pursuant to the memorandum of April 26, 1943 (quoted supra) into Class I-A(L). Not only does it fail to suggest any right of limited service registrants to be classified in Class IV-F, but it directs precisely the opposite action.

There being no error, the judgment discharging the writ is affirmed.