Clifton Charles CAMPBELL, Appellant,

v.

UNITED STATES of America, Appellee.

No. 6906.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 6, 1955.

Decided Feb. 21, 1955.

Argued April 13, 1955.

On Rehearing April 14, 1955.

Robert B. Myers, Rockville, Md., for appellant.

Beverly A. Davis, III, Asst. U. S. Atty., Rocky Mount, Va., and John Strickler, U. S. Atty., Roanoke, Va. (Thomas J. Wilson, Harrisonburg, Va., and Benjamin F. Sutherland, Asst. U. S. Attys., Clintwood, Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal in a criminal case in which appellant was convicted of failing to report for induction into the military service of the United States, in violation of the terms of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix § 462. Appellant claims to be a conscientious objector. He admits that he was denied this classification by the draft board and that he failed to report for induction when ordered; but he contends that the order of the board classifying him was void because not based upon anything contained in his file and because the board did not reopen his classification when considering two letters referred to it by state headquarters for Selective Service. He contends, also, that the trial judge committed reversible error in not requiring the production at his trial of the F.B.I. report which was furnished the examining officer of the Department of Justice. We think that none of these contentions can be sustained.

Appellant registered under the Universal Military Training and Service Act in 1951. In July of 1952 he filled out and filed with the local draft board a questionnaire in which he made no claim to being a conscientious objector; and the evidence shows that at that time he was asked by the clerk of the board whether or not he was a conscientious objector and replied that he was not. In the following December he filed claim to this classification, which was denied by the board, and he was given classification 1–A. He then requested that he be allowed to appear personally before the board and present his claim, and this request was allowed, but after seeing and hearing him the board adhered to the 1–A classification. He then appealed to the State Appeal Board, which also classified him 1–A. At the time of registration, appellant was an employee of Luray Caverns in Virginia. At the time of claiming exemption as a conscientious objector he was an employee of an overall manufacturing company. Sometime later he left this work and accepted work as an orderly in a hospital in New Hampshire, in what is contended was an attempt to avoid military service. He gave up this work when he was given 1–A classification by the Appeal Board.

After the appeal to the Appeal Board, the procedure prescribed by 50 U.S.C.A. Appendix, § 456(j) was followed, i. e. an investigation was made by the F.B.I. and a hearing was accorded appellant by a hearing officer of the Department of Justice who had received the F.B.I. report and who had furnished him a summary thereof before the hearing. After the hearing, the officer made report to the Department of Justice, which, on the basis of his report, made recommendation to the Appeal Board, recommending against the exemption. Neither the report of the F.B.I. nor the summary thereof furnished appellant was seen by either the local board or the Appeal Board.

After the Appeal Board had acted upon the appeal, the state headquarters of selective service, at appellant's request, asked the local board to include two letters in appellant's file and review them and determine whether the information therein contained was sufficient to warrant a change of classification. The local board considered the letters but found in them no reason for disturbing appellant's classification or for reopening the matter.

Appellant contends that because there was nothing in his file contradicting his claim of being a conscientious objector the board could not lawfully do otherwise than so classify him, relying upon the decision of the Supreme Court in Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132. That case, however, involved the status of a minister of religion, a matter capable of objective proof, not, as here, a matter of subjective belief. Whether or not such belief is entertained in good faith is a matter for decision in the first instance by the local board, the members of which, coming from registrant's community and having seen him and heard his statement with regard to the matter, are presumably better qualified than anyone else could possibly be to pass upon the question of fact involved and decide whether he is telling the truth about being a conscientious objector or whether this is a mere pretense put forward to escape military service. The Appeal Board can and should give weight to the fact that the local board has had the advantage of seeing the registrant and hearing him testify. Neither board is bound to believe a registrant's statement as to his belief, especially when, as here, conscientious objection seems not to have been thought of until military service became imminent. The burden of proof rested upon appellant to prove that he was a conscientious objector. He could not shift the burden of that issue by his statement as to his belief. His contentions to that effect were conclusively answered, we think, by Judge Lindley, speaking for the Court of Appeals of the 7th Circuit in United States v. Simmons, 7 Cir., 213 F.2d 901, 903–904, where he said:

"Defendant contends, on authority of Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152 [98 L.Ed. 132], that the denial of a conscientious objection claim has a basis in fact only when the board has procured affirmative evidence which contradicts the representations made by a registrant in his application for exemption,—that the board must make a record to support its order.
\* \* \*

"\* \* \* a distinction must be drawn, we believe, between a claim of ministerial status and a claim of conscientious objection status as to susceptibility of proof. Whether a registrant is a minister in the statutory sense, having as his principal vocation the leadership of and ministering to the followers of his creed, is a factual question susceptible of exact proof by evidence as to his status within the sect and his daily activities. No search of his conscience is required. Even though the only tenet of his cult be a belief in war and bloodshed, he still would be exempt from military service if he were, in fact, a minister of religion. Is he affiliated with a religious sect? Does he, as his vocation, represent that sect as a leader ministering to its followers? These questions are determinative and subject to exact proof or disproof.

"The conscientious objector claim admits of no such exact proof. Probing a man's conscience is, at best, a speculative venture. No one, not even his closest friends and associates, can testify to a certainty as to what he believes and feels. These, at most, can only express their opinions as to his sincerity. The best evidence on this question may well be, not the man's statements or those of other witnesses, but his credibility and demeanor in a personal appearance before the fact-finding agency. We cannot presume that a particular classification is based on the board's disbelief of the registrant, but, just as surely, the statutory scheme will not permit us to burden the board with the impossible task of rebutting a presumption of the validity of every claim based ofttimes on little more than the registrant's statement that he is conscientiously opposed to participation in war. When the record

discloses any evidence of whatever nature which is incompatible with the claim of exemption we may not inquire further as to the correctness of the board's order."

The recent case of White v. United States, 9 Cir., 215 F.2d 782, 784–785, is directly in point; and the court there similarly distinguished the Dickinson case, saying:

"The argument appears to add up to the proposition that since the appellant stated in his questionnaire and in letters addressed to the boards that he was conscientiously opposed not only to combatant service but to noncombatant service as well, and since these statements were supported by letters from his mother and his minister, the selective service boards were obliged to make findings in accordance with his claims, in the absence of other affirmative evidence which contradicted his representations. This argument relies upon Dickinson v. United States, 346 U.S. 389, 74 S. Ct. 152 [98 L.Ed. 132], and appellant's position is that the rule of that case must be applied here.

"We think that the facts of this case do not call for any such conclusion. The question before the local board had to do not with what religious organization or sect the appellant adhered to, nor what the teachings of that sect or organization was, but what was the sincere belief of this particular registrant and what was the extent of his conscientious opposition to military service. In other words, the local board initially, and the appeal board subsequently, were called upon to evaluate a mental attitude and a belief. It is plain that when such matters are to be determined and passed upon, the attitude and demeanor of the person in question is likely to give the best clue as to the degree of conscientiousness and sincerity of the registrant, and as to the extent and quality of his beliefs.

The local board, before whom the registrant appeared, had an opportunity surpassing that available to us or to the appeal board itself to determine and judge as to these matters."

We think it clear that the classification of the board cannot be held invalid as not supported by the record. We think it equally clear that it cannot be held invalid for failure to reopen and consider anew the classification of appellant under 1625.3 of the regulation, which provides in part:

"The local board shall reopen and consider anew the classification of a registrant upon the written request of the State Director of Selective Service or the Director of Selective Service and upon receipt of such request shall immediately cancel any Order to Report for Induction (SSS Form No. 252) which may have been issued to the registrant."

There was no request that the board reopen and consider anew the classification of appellant, but merely that it review the content of two letters and make a determination as to whether or not the information therein contained was sufficient to warrant a change in classification. This the board did and held the letters insufficient to warrant a change. This was a matter within the discretion of the board and there is nothing to indicate that the discretion was abused. Smith v. United States, 4 Cir., 157 F.2d 176, 181, certiorari denied 329 U.S. 776, 67 S.Ct. 189, 91 L.Ed. 666, rehearing denied 329 U.S. 831, 67 S.Ct. 367, 91 L.Ed. 704.

The District Court had no power to review the action of the draft board or to determine whether or not the appellant was a conscientious objector. This was a matter committed by the law exclusively to the board, and its action, if validly taken, was binding upon the court. The appellant having admitted his failure to comply with the order of induction, the only question before the court was the validity of the

order of classification upon which the order of induction was based. As said by the Supreme Court in Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 427, 90 L.Ed. 567:

"The provision making the decisions of the local board 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant. See Goff v. United States, 4 Cir., 135 F.2d 610, 612."

The case of Goff v. United States cited by the Supreme Court in the passage quoted, was a decision of this court wherein we said [135 F.2d 612]:

"The courts are given no power to review proceedings of the Draft Boards, but the decisions of these boards are made final by express provision of the Selective Training and Service Act. 50 U.S.C.A.Appendix, § 310(a) (2). Some courts have held that even invalidity in the orders of the Board may not be shown by way of defense to a criminal action, but must be availed of by habeas corpus. United States v. Grieme, 3 Cir., 128 F.2d 811; Fletcher v. United States, 5 Cir., 129 F.2d 262. It would seem, however, that the total invalidity of an order which would be necessary to justify release on habeas corpus would constitute a defense to a criminal action based on disobedience of that order. But as we said in the case of Adrian Elwood Baxley v. United States, 4 Cir., 134 F.2d 998, this does not mean that the court in a criminal proceeding may review the action of the board. That action is to be taken as final, notwithstanding errors of fact or law, so long as the board's jurisdiction is not transcended and its action is not so arbitrary and unreasonable as to amount to a denial of constitutional right."

■ As there was no power in the District Court to review the action of the draft board, we think that the trial judge was clearly right in refusing to require the production of the F.B.I. report which was considered by the hearing officer of the Department of Justice, but which was not before either the local board or the Appeal Board, as was the case in Brewer v. United States, 4 Cir., 211 F.2d 864. If seeing the F.B.I. report could have been of any use to appellant, it would have been at the hearing before the examining officer of the Department of Justice or before the Appeal Board, when the recommendation of the Department of Justice was before that board for consideration; but appellant did not ask that it be produced on either of these occasions; and the Supreme Court has held that he was not entitled to have it produced for use on either of them. United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417. It would be absurd, we think to hold that a registrant is not entitled to have the benefit of the F.B.I. report at hearings where questions of fact are being determined and the report might be of use to him but that he is entitled to have it after the determinations of fact have been made and the only question is the validity of the action of the fact-determining body. Directly in point is the decision of the Court of Appeals of the 9th Circuit, in White v. United States, supra, 215 F.2d 782, 791. As said by that court, "We refuse to believe that the Court labored and brought forth a mouse of a decision that the hearing officer need not show the FBI report when the situation was such that the trial court must nec-

essarily admit it." See also Tomlinson v. United States, 9 Cir., 216 F.2d 12. Cf. United States v. Evans, D.C., 115 F.Supp. 340; United States v. Edmiston, D.C., 118 F.Supp. 238.

As pointed out by the Supreme Court in the Nugent case, the inquiry conducted by the Department of Justice through the F.B.I. and through the hearing officer is merely for the purpose of enabling the Department of Justice to offer advice with respect to a registrant who has already been denied conscientious objector classification by the local board. This advice is not binding upon either the Appeal Board or the local board, these boards, notwithstanding the advice, still being charged with full responsibility for making the classification. It is argued that the F.B.I. report should be produced so that the court can determine whether or not the hearing officer has furnished the accused a fair summary thereof; but, if the courts may not correct errors of the draft boards, whether of law or of fact, they certainly may not require production of evidence to show the mere possibility of such error by reason of possibility of error on the part of the hearing officer, who can do no more than recommend action in any event.

 It should be remembered that any exemption from military service on account of conscientious objection to war is granted as a matter of grace. Congress need not have granted any exemption at all, or it could have made the action of the local board final without appeal of any sort. In providing for an appeal and for investigation and recommendation by the Department of Justice, it has provided for no review of the action or recommendation of the hearing officer just as it has provided no review for the action of the Appeal Board. In the absence of such provision for review the courts may not exercise it. Regulation of the draft machinery is a matter for Congress, not the courts. In the absence of clear invasion of constitutional right, the courts may not interfere, where, as here, the procedure prescribed by Congress has been followed.

Affirmed.

## On Rehearing.

PER CURIAM.

A rehearing has been granted in this case because of the decisions rendered by the Supreme Court on March 14, 1955 in Witmer v. United States, 75 S.Ct. 392; Simmons v. United States, 75 S.Ct. 397; Sicurella v. United States, 75 S.Ct. 403, and Gonzales v. United States, 75 S.Ct. 409; and reargument has been had in the light of these decisions. We find nothing in any of them, however, which calls for any modification of the decision heretofore rendered herein. The decision appealed from will accordingly be again affirmed.

Affirmed.