**UNITED STATES of America,
Plaintiff,**

v.

**Denver Eugene MAJHER, Defendant.**

**Crim. No. 9079.**

United States District Court
S. D. West Virginia,
Huntington Division.

Jan. 26, 1966.

473, by refusing to perform civilian work prescribed by the Act for conscientious objectors. He entered a plea of "not guilty" and the case proceeded to trial by the Court, a jury being waived. At the close of all the evidence, the defendant moved for a judgment of acquittal on the ground that certain procedural rights were denied him in the course of the administrative process resulting in a denial of due process of law. Having received briefs from the respective parties, the case is now ready for determination of the issues involved.

On May 31, 1963, Local Board #2 in Huntington, West Virginia, sent defendant the usual classification questionnaire, SSS Form 100. In answering this questionnaire, defendant claimed a ministerial exemption, stating that he had been ordained a minister of the Jehovah's Witnesses on October 16, 1957, at Clarksburg, West Virginia, by Dr. J. Thomas, an ordained minister. To further prove his right to a ministerial exemption, defendant submitted the following additional information with the questionnaire: (1) Handbills showing that he had preached from public platforms to members of the congregation of Jehovah's Witnesses, (2) affidavits of other Jehovah ministers recognizing him as an ordained minister of their sect, (3) photostatic copy of certificate of ordination and appointment as Literature Overseer showing that the Watchtower Bible and Tract Society (official organ of the sect) recognized him as an ordained minister, and (4) a photostatic copy of his license to perform marriage ceremonies, issued by the Cabell County Clerk's Office.

Under Series V of the questionnaire, defendant stated that he was presently working as a factory laborer at International Nickel Company on the average of 40 hours per week in addition to engaging in his ministerial work. Under Series VIII of the questionnaire, he further claimed exemption as a conscientious objector.

On June 8, 1963, defendant sent an additional letter to the local board con-

Milton J. Ferguson, U. S. Atty., Charleston, W. Va., and George D. Beter, Asst. U. S. Atty., Huntington, W. Va., for plaintiff.

Victor F. Schmidt, Columbus, Ohio, and Horace S. Meldahl, Charleston, W. Va., for defendant.

CHRISTIE, District Judge:

The defendant was indicted for violating the Universal Military Training and Service Act, 50 U.S.C.A. App. §§ 451–

cerning his ministerial duties. It provided, in pertinent part, as follows:

"My reason for being a minister is that I have always wanted to engage in a vocation that would bring me the most happiness and peace of mind. Before I was ordained as a minister of the gospel I had received much training and preparation for this work. Although I was still attending public school, I took advantage of every opportunity and preached at the local congregation of Jehovah's Witnesses at Huntington, W. Va. by preaching sermons before them and calling upon people at their homes.

\* \* \* \* \* \*

"In Sept. 1955, I enrolled in an advanced course in Bible educational work known as a ministry school. This is a course that instructs and helps ministers in platform and door to door witnessing.

\* \* \* \* \* \*

"An approximate monthly schedule of time spent in my ministerial work is as follows:

"A. 20 hrs. per mo. personal study.

"B. 17 hrs. per mo. preparing for meetings and discourses.

"C. 8 hrs. per mo. preparing material for return visit on people of good will.

"D. 30 hrs. per mo. attending meetings and assemblies.

"E. 20 hrs. per mo. making personal calls on the homes of the people in my assigned territory.

"F. 10 hrs. per mo. giving home Bible studies to persons of good will.

"G. 10 hrs. per mo. traveling in ministerial work.

"I am, also, in the appointed position as Literature Overseer at the Huntington, West Unit Congregation of Jehovah's Witnesses. Its duties consist of the handling of Bibles, Bible study aids, and other supplies needed for the congregation members in their preaching work; as well as keeping of the records of such.

"Due to the fact that my father is unemployed, at the present, and has a physical defect (poor vision; appro. 20/100) making it hard to obtain employment and Jehovah's Witnesses do not receive a salary for their services, it is necessary for me to engage, at the present, in secular work in order to financially aid my family and in order to maintain myself in the ministry."

Defendant thereafter submitted a special conscientious objector form claiming exemption from both combatant and noncombatant training and service in the Armed Forces by reason of his religious training and belief.

On August 6, 1963, the local board classified defendant I–O, (Exempt from all military duty, both combatant and noncombatant but subject to assignment to civilian work in the national interest, Section 6(j) of the Act). Believing this to be an entirely unsatisfactory classification, defendant requested a personal appearance before the board. At the hearing on September 10, 1963, defendant requested a IV–D classification (ministerial exemption) stating that he had proved he was performing the duties of a minister. The board, however, found that defendant had failed to present new information or to point out anything in his file that would justify reclassification as IV–D. A subsequent appeal resulted in a continuance of his I–O classification.

Defendant, on July 30, 1964, was informed of appropriate types of civilian work he could perform in lieu of induction. He, however, refused to choose any of the listed jobs stating,

"As an ordained minister, I cannot offer to perform any of the three types of work submitted by this draft board."

On August 25, 1964, defendant was accorded a personal hearing before the board to reach an agreement as to what civilian work he would perform. He

refused to accept any type of work mentioned and was advised that a place of employment would be selected for him.

On August 29, 1964, defendant, by letter, requested the board to reopen his classification based on the fact that he was now pursuing the full-time ministry. He stated,

"I am submitting a photostatic copy of my appointment as Vacation Pioneer. This is the same as Regular Pioneering as the same amount of time in the ministry is required. My Vacation Pioneer appointment is a necessary preliminary step to my Regular Pioneer appointment, December 1, 1964."

On September 15, 1964, the local board notified defendant that the new information had been reviewed and the case would not be reopened. He was thus ordered to report for hospital work at Memorial Hospital in Charleston, West Virginia, on September 28, 1964.

Defendant again wrote to the board on September 18, 1964, contending as follows:

"I feel that the local board does not fully understand my position as a Vacation Pioneer; for that reason, I would like to request a personal appearance before the board.

"As a Vacation Pioneer, I am a *full-time* minister. Fully following the ministry as a vocation. Even though the term vacation pioneer is used, in my case, it does not mean something temporary. It is serving merely until the Watchtower Society can enroll me as a Regular Pioneer.

"Since I am now a full time minister and this being my vocation, I would like to make a request for a personal appearance to discuss my claim for a ministerial classification.

"If this request for a personal appearance is not granted, I would like to make an appeal on the order denying my request to reopen my classification."

On September 21, 1964, the board informed defendant that his right of appeal and personal appearance before the board had expired. Defendant then requested the State Director of the Selective Service to have the local board reopen and consider anew his classification. The State Director, however, advised defendant by letter on September 28, 1964, that he would not authorize the reopening of his classification. Defendant then did not report to his assigned work and this present indictment ensued.

Our judicial review of these administrative proceedings leading to defendant's classification is very limited. Blalock v. United States, 247 F.2d 615 (4th Cir. 1957). The range of review is the narrowest known to the law. Campbell v. United States, 221 F.2d 454 (4th Cir. 1955). The only issues before the Court in this type of case are whether there is shown a denial of basic procedural fairness or whether the conclusion of the board is unsupported by any basis in fact. Witmer v. United States, 348 U. S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Goff v. United States, 135 F.2d 610 (4th Cir. 1943).

Defendant specifically contends that it was a violation of due process in not allowing him to appeal from the ruling of September 15, 1964, denying a reopening of his classification. The applicable regulation, Section 1625.4, provides as follows:

"Refusal to reopen and consider anew registrant's classification. When a registrant * * * files with the local board a written request to reopen and consider anew the registrant's classification and the local board is of the opinion that the information accompanying such request fails to present any facts in addition to those considered when the registrant was classified or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification, it shall not reopen the registrant's classification. In such a

case, the local board, by letter, shall advise the person filing the request that the information submitted does not warrant the reopening of the registrant's classification and shall place a copy of that letter in the registrant's file. No other record of the receipt of such a request and the action taken thereon is required." 32 CFR 1625.4

Thus, no provision is made in the regulation for an appeal as defendant now seeks. Furthermore, this regulation has been held to be fair and adequate procedure and not in violation of due process. United States v. Beaver, 309 F.2d 273 (4th Cir. 1962); Klubnikin v. United States, 227 F.2d 87 (9th Cir. 1955); Boyd v. United States, 269 F.2d 607 (9th Cir. 1959). As clearly brought out in the *Klubnikin* case, supra,

"The machinery established by the Selective Service Regulations is and of necessity must be geared to the prodigious task of processing millions of registrants. The regulations grant an administrative appeal whenever there has been a reclassification of a registrant by his local draft board. See 32 C.F.R. § 1625.13. Moreover, whenever the local draft board initially determines that sufficient facts have been alleged by the registrant to warrant the reopening of his classification its final decision on whether or not a new classification shall be awarded is appealable. See 32 C.F.R. § 1625.11. It is only where the local board determines that the registrant has failed to set forth sufficient facts to warrant reconsideration that no administrative review is afforded. See 32 C.F.R. § 1625.4. Provision for review on refusal to reclassify would invite successive frivolous appeals designed to delay induction and frustrate the purposes of the Act. The regulations provide for fair and adequate procedure."

■ It is true that 32 C.F.R. Section 1624.2(e) provides for an appeal from a determination not to reopen where the defendant has made a personal appearance before the local board. However, defendant does not come within this section, since no personal appearance was granted on that request to reopen. Therefore, we must conclude that the local board's decision of September 15, 1964, not to reopen the classification, pursuant to registrant's August 29, 1964 request, thus giving him no right of appeal, was not violative of due process.

Defendant, secondly, contends that he was denied due process of the law when the local board refused on September 21, 1964 to honor his request of September 18, 1964, for a personal appearance and to reopen after he had presented new evidence showing he was then devoting full time to the ministry, thus establishing a *prima facie* case for a ministerial exemption.

■ Whether additional evidence submitted to the draft board after classification of registrant is of sufficient weight to require a reopening of case is within the discretion of board. Smith v. United States, 157 F.2d 176 (4th Cir. 1946); United States v. Blankenship, 127 F.Supp. 760 (N.D.W.Va.1954). However, the rule requiring a "basis in fact" for the action of the board in making the original classification is equally applicable to the action of the board in determining whether or not changed conditions justify a reopening of the registrant's classification. United States v. Ransom, 223 F.2d 15 (7th Cir. 1955). Thus, the local board cannot escape the requirement of the "basis in fact" rule by simply refusing to reopen. United States v. Ransom, supra. From a review of the record, we can find no factual basis justifying the local board's refusal to reopen. It surely cannot be argued that Jehovah's Witnesses, because of their religious practices, are not entitled to an exemption. It is well accepted that Jehovah's Witnesses come under the ministerial exemption if they are regular or duly ordained ministers of religion and otherwise qualified. Dickinson v. United States, supra; United States v. Cheeks, 159 F.Supp. 328 (D.Md.1958).

Section 16(g) of the Act defines regular or duly ordained ministers of religion as follows:

"(1) The term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization.

"(2) The term 'regular minister of religion' means one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister.

"(3) The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization."

In the light of registrant's assertions of fact, contained in his letter of September 18, 1964, that he was then devoting full time to the ministry, could the local board, under (3) of Section 16 (g) summarily refuse him an audience and a hearing on his contention? We think not. Whether the registrant was then following the ministry regularly as a vocation, as he contended, or whether his preaching was irregular and only incidental to the ministry, as the board apparently determined, was a question of fact, requiring a fresh inquiry. Certainly, at the time of defendant's original classification, the fact that he was working regularly at International Nickel Company on the average of 40 hours per week would give the board a sufficient "basis in fact" to hold that his preaching was only incidental and not his true vocation. However, the regulations recognize that "no classification is permanent," 32 C.F.R. Section 1625.1, and they empower the local board to reopen and consider anew the classification of a registrant if his request for a reopening is accompanied by written information presenting facts not considered at the time of the original classification, which, if true, would justify a change in the registrant's classification. 32 C.F.R. Section 1625.2. Here, defendant in his request to reopen his classification submitted documentary evidence that he had been appointed a Vacation Pioneer, requiring him to spend at least 100 hours per month in the ministry. He further stated that he was now pursuing the ministry full time. Viewing this additional evidence in light of the following facts: (1) That defendant was ordained as a minister in 1957; (2) that the Jehovah's Witnesses, by various affidavits, recognized defendant as one of their regular ministers; and (3) that the showing, by his letter of June 8, 1963, that he was then spending 115 hours per month in ministerial work, presented a *prima facie* case for a ministerial classification. Cf. United States v. Ransom, supra; Dickinson v. United States, supra. The Government contends, however, that the case of United States v. Diercks, 223 F.2d 12 (7th Cir. 1955) is controlling. That case is quite distinguishable from the facts involved here. There, as the Court point-

ed out, Diercks' file from the beginning to the end showed a consistent record of secular work and at no time was there any reduction in such. Here, defendant, in his request for a reopening, clearly stated that he was now performing ministerial work full time. The Government claims that this statement did not positively reflect a change in his status. Even if this were true, it is obvious that the local board did not investigate to see whether or not there was any "basis in fact" for denying his request to reopen or they would have naturally found that defendant had terminated his job before he made his request to reopen.[1]

 The Government finally contends that defendant failed to demonstrate "sincerity" when objecting on religious grounds to participation in war in any form, as required by Witmer v. United States, supra. The Witmer case, however, dealt with an entirely distinct issue, that is, Witmer was claiming only conscientious objector status. In conscientious objector cases, sincerity is the ultimate question. Here, we are dealing with a claim for a ministerial exemption and it was not for the board to say whether defendant was motivated by sincere religious principles in becoming a minister, but merely whether he was a "regular or duly ordained minister of religion." Cf. Witmer v. United States, supra; Dickinson v. United States, supra. The fact that induction was an immediate threat when defendant quit his job and devoted his full time to the ministry is not of importance. Bad faith is not at issue in a case such as this. Dickinson v. United States, supra.

Thus, the objective facts disclose a *prima facie* case for a ministerial exemption, and, finding no "basis in fact" for refusing to reopen defendant's classification, we must hold that such denial was a violation of due process, thereby entitling defendant to a reopening of his classification.

1. Mr. Lapelle, supervisor at International Nickel Company, testified at the trial on behalf of the Government that the company's records showed that the defendant terminated his job on August 28, 1964.

## ORDER

For the reasons appearing in the foregoing opinion, the Government has failed to convict the defendant of the charge for which he stands indicted, and he is accordingly found not guilty thereof. The indictment is hereby dismissed.