**Julita David ROBERTSON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 25099.**

United States Court of Appeals
Fifth Circuit.

Dec. 5, 1968.

1. See also 28 U.S.C.A. Sec. 2254, as amended Nov. 2, 1966, Pub.L. 89–711, § 2; 80 Stat. 1105.

Stephen D. Susman, Houston, Tex., for appellant.

Robert E. Hauberg, U. S. Atty., E. Donald Strange, Asst. U. S. Atty., Jackson, Miss., for appellee.

Before WISDOM and COLEMAN, Circuit Judges, and RUBIN, District Judge.

RUBIN, District Judge:

Appealing from his conviction for failure to report for civilian work as a conscientious objector pursuant to an order of his Selective Service Board,[1] Julita David Robertson asserts that the Board improperly refused to grant him a ministerial exemption. He urges that the Board's actions violate the Selective Service Regulations, and he contends, additionally, that the procedural provisions of the Selective Service Act and Regulations violate the Constitution.

The Board dealt considerately with Robertson, and it apparently relied upon the advice of State Headquarters in determining that he was not a minister. But, notwithstanding this, it failed to follow the procedures required by the Selective Service Regulations, and it applied an improper legal standard in reaching this determination. Robertson's conviction must therefore be reversed.[2]

Robertson, a Jehovah's Witness, was classified as a conscientious objector. He contended, however, that he was a minister, and, after he had asserted this claim to his local board several times, the Board arranged for him to meet with Colonel Weeks, a State Selective Service official. When Robertson went to see the Colonel with his father and two other members of his faith, Colonel Weeks told him that he could not be classified as a minister unless he had a Regular Pioneer certificate from his church.[3] Apparently, Colonel Weeks considered such an affidavit essential, no matter what duties Robertson was actually performing and without regard to his relationship to members of his faith.

After this meeting, the local board clerk wrote Robertson requesting that he offer to perform one of three types of approved civilian work within ten days. Instead, Robertson sent or delivered various letters to the local board stating that he was sincerely preparing himself for the full-time ministry, including a letter from the Watchtower Bible and Tract Society appointing him a Vacation Pioneer retroactively for the last two weeks in August.

---

1. In violation of Section 12(a) of the Universal Military Training and Service Act, 50 App.U.S.C. § 462.

2. Since we reverse on this basis, it is, of course, unnecessary to consider the constitutional issues.

3. Regular Pioneers are full time ministers of the Watchtower Bible and Tract Society, appointed for indefinite terms. Their duties require them to devote at least 100 hours per month to ministerial activities. The church also appoints Vacation Pioneers for limited periods. These appointments must be for at least half a month and appointees must devote at least 75 hours to their duties if appointed for two weeks and at least 100 hours a month to their duties if appointed for a month or longer. Vacation Pioneerships are used by the Watchtower Society for two purposes. Originally, they were intended to encourage Jehovah's Witnesses to devote their vacations to the ministry. Today the appointments serve primarily to provide trial periods for applicants who wish to become Regular Pioneers. They often last for periods of many months. The Society makes no distinction between Vacation Pioneers and Regular Pioneers in terms of duties and activities.

Thereafter, at the advice of a Selective Service official, the Board wrote Robertson requesting that he meet with it on October 14, 1965 "to reach an agreement upon a type of civilian work." The letter did not indicate that the Board would consider his claim to a ministerial exemption. However, the Board's minutes reflect that at the meeting the Board "again reviewed the file concerning the registrant's preaching activities." They report that the Board "asked the registrant if he felt he was qualified for a IV-D [ministerial] classification under the criteria of Selective Service Regulations," and that the registrant "not only replied in the negative, but stated that he did not qualify for a full-time minister as required by the Watchtower Bible and Tract Society." Robertson's conclusions were, of course, based on the information he had received from Colonel Weeks. The Board then "declined to reopen [Robertson's] classification and classify him anew." Robertson was never notified in writing of this decision.

On October 18, Robertson notified the Board that his Vacation Pioneer appointment had been extended from September 1, 1965 through January 31, 1966. Under this appointment, he was required to devote at least 100 hours per month to the full time ministry. The letter appointing Robertson encouraged him to apply for a Regular Pioneer appointment thirty days before his Vacation Pioneer appointment expired.

The evidence submitted by Robertson on October 18 was never reviewed by his local board. His classification was not reopened, and he was given no further notification on the subject.

On November 2, the Board ordered Robertson to report for civilian work in thirteen days. He failed to obey this order and prosecution followed.

*I. The local board did not comply with Selective Service Regulations in acting on Robertson's request.*

Because the scope of judicial review of local board action is the "narrowest known to the law"[4] and a classification made by a local board can be altered only if it has "no basis in fact,"[5] it is imperative that the Selective Service system faithfully follow its own procedures.

The basic tenet of the Regulation is, "No classification is permanent."[6] The Regulations do not merely permit, they require each classified registrant to report to the local board in writing, within ten days after it occurs, "any fact that might result in his being placed in a different classification such as, but not limited to, any change in his occupational * * * status * * *"[7] Upon the written request of any registrant, "[T]he local board *may* reopen and consider anew" his classification "if such request is accompanied by written information presenting facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification."[8]

Registrants may change their status in many ways from the time they register at age 18 until they either serve in

---

4. Clay v. United States, 5 Cir., 1968, 397 F.2d 901, 915; Matyastik v. United States, 5 Cir., 1968, 392 F.2d 657, 658; Campbell v. United States, 4 Cir., 1965, 221 F.2d 454.

5. Cox v. United States, 1947, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59; Estep v. United States, 1946, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567.

6. 32 C.F.R. § 1625.1(a).

7. 32 C.F.R. § 1625.1(b).

8. 32 C.F.R. § 1625.2. (Emphasis Supplied). If, however, a "written request to reopen and consider anew the registrant's classification" is filed, "and the local board is of the opinion that the information accompanying such request fails to present any facts in addition to those considered when the registrant was classified or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in * * * classification." 32 C.F.R. § 1625.4 provides that the local board "shall not reopen the registrant's classification."

the armed forces or cease to be eligible:[9] they may become or cease to be students, they may begin or change employment, and they may acquire or lose dependents. When a change in status is reported to it, the local board must decide whether or not to reopen the registrant's classification on the basis of the evidence submitted. If it decides to reopen, it must next decide whether the registrant should be reclassified. In the event the registrant's classification is reopened but is not thereafter changed, he has the right to a personal appearance before the local board and an appeal *de novo* to a State Appeal Board.[10]

■ If the local board decides not to reopen a registrant's classification, the Regulations provide, "[T]he local board, by letter, shall advise the person filing the request that the information submitted does not warrant the reopening of the registrant's classification and shall place a copy of the letter in the registrant's file."[11] This serves to inform the registrant that the facts he submitted did not justify reopening his classification and that he must present additional facts to the Board in order to obtain reopening and be considered for reclassification. Although it appears from the minutes of the October 14th meeting of the local board that a decision was made not to reopen Robertson's case, no letter was ever sent to him notifying him of this action.[12] In addition, there is no evidence that the Board reviewed the letters Robertson submitted on October 18 certifying that his Vacation Pioneer appointment had been extended through January and requiring him to devote a minimum of 100 hours per month to full time ministerial functions.

■ "Men must turn square corners when they deal with the Government."[13] But the government in dealing with its citizens owes them an equal obligation to right its angles. Since the scope of judicial review is so narrowly restricted

---

9. This occurs either at age 26 or, if a registrant has previously received a deferment, at age 35.

10. 32 C.F.R. § 1625.13. Judicial review is not available in the normal course of events, although a registrant who still considers himself improperly classified can accept induction and petition for a writ of habeas corpus or refuse induction and raise the classification question as his defense in a criminal prosecution.

11. 32 C.F.R. § 1625.4.

12. Such notification is important for the Regulations do not provide a right to appeal a decision not to reopen and consider anew a registrant's classification. 32 C.F.R. § 1625.4, Klubnikin v. United States, 9 Cir., 1955, 222 F.2d 87; United States v. Majher, S.D.W.Va., 1966, 250 F.Supp. 106. This should be distinguished from the right of any registrant to appear before his local board within thirty days after he receives a Notice of Classification and to seek reopening of his classification at that time. If the Board then refuses to reopen, there is a right to appeal for C.F.R. § 1624.2(e) provides, "Each *such* classification or determination not to reopen the classification made under *this* Section shall be followed by the same right of appeal as in the case of an original classification."

We have previously indicated in dicta the opinion that there is a right to an administrative appeal from a refusal to reopen and consider anew a registrant's classification. Olvera v. United States, 5 Cir., 1955, 223 F.2d 880. The Ninth Circuit has held, however, to the contrary. Stain v. United States, 9 Cir., 1956, 235 F.2d 339. Upon reconsideration we think that the interpretation of the Regulations reached by the Ninth Circuit is correct. Certainly, there is no Constitutional right to have the statute provide an administrative appeal. In United States ex rel. La. Charity v. Commanding Officer, 2 Cir. 1944, 142 F.2d 381, 382, dealing with a similar situation under World War II Regulations, the court pointed out that if a denial of reopening was subject to an administrative appeal a registrant could postpone his induction indefinitely.

13. Holmes J., Rock Island, Arkansas, and Louisiana Railroad v. United States, 1920, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L. Ed. 188.

in Selective Service cases,[14] we said in Olvera v. United States:[15]

" * * * [I]t is of the essence of the validity of board orders and of the crime of disobeying them that all procedural requirements be strictly and faithfully followed, and * * * a showing of failure to follow them with such strictness and fidelity will invalidate the order of the board and a conviction based thereon."

■■ While the Regulations provide only that the Board *"may"* reopen a classification upon the receipt of new evidence,[16] we pointed out in *Olvera*[17] that the local board may not exercise its discretion not to reopen a registrant's case in an "arbitrary" and "unreasonable" manner.[18] The Board must have a "basis in fact" in order to deny a request for reopening a classification.[19] If the registrant submits new information "not considered when the registrant was (originally) classified, which, if true, would justify a change in the registrant's classification,"[20] (i. e., if he presents a prima facie case for reclassification) the Board has a duty to reopen his case.[21]

■ By November 2, 1965, Robertson had presented evidence that he was working 100 hours per month as a full time minister, albeit his church category was Vacation Pioneer. There was also evidence that the Jehovah's Witnesses consider some Vacation Pioneers to be regular ministers. This was sufficient to require the reopening of his case.[22]

■ Whether or not a registrant is ultimately reclassified, the decision by the local board to reopen or not to reopen his classification is a separate determination of independent procedural significance.[23] As the Ninth Circuit pointed out in Miller v. United States, 1967, 388 F.2d 973, the Regulations do not permit the Board to evaluate a request for reclassification on its merits until it first determines whether the information submitted by the registrant requires reopening. The Board may not consider "the situation upon its merits, and then * * * accord to its classification result the status of a denial merely of the claimant's motion to reopen."[24] In this case, the Board did not reopen Robertson's classification and deny reclassification on the merits. Instead, it considered whether or not he should be reclassified, and, having de-

---

14. See "Fairness and Due Process Under the Selective Service System," 114 U.Pa. L.Rev. 1014, 1023.

15. 5 Cir., 1955, 223 F.2d 880, 882.

16. 32 C.F.R. § 1625.2.

17. Olvera v. United States, 5 Cir., 1955, 223 F.2d 880, 883.

18. See also United States v. Vincelli, 2 Cir., 1954, 215 F.2d 210.

19. In United States v. Ransom, 7 Cir., 1955, 223 F.2d 15, 17, the court stated: "We think that the rule requiring a basis in fact for the action of the board in making the original classification, as announced in *Dickinson* and *Estep* is equally applicable to the action of the board in determining whether or not changed conditions justify a reopening of the registrant's classification and consideration of his claim to a different classification. * * * If a registrant makes a prima facie showing of right to a new classification, the board cannot refuse to give it

to him unless it has at least a basis in fact for that refusal." See also Stain v. United States, 9 Cir., 1956, 235 F.2d 339; Estep v. United States, 1946, 327 U.S. 114, 66 S.Ct. 42; Dickinson v. United States, 1953, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132.

20. 32 C.F.R. § 1625.2.

21. United States v. Ransom, 7 Cir., 1955, 223 F.2d 15; United States v. Majher, S.D.W.Va.1966, 250 F.Supp. 106.

22. In United States v. Majher, S.D.W.Va., 1966, 250 F.Supp. 106, a similar case, the court held that a registrant presented a prima facie case. See Dickinson v. United States, 1953, 346 U.S. 389, 74 S.Ct. 152.

23. If a case is not "reopened," the registrant is cut off at this preliminary stage from all further channels of administrative review.

24. Miller v. United States, 9 Cir., 1967, 388 F.2d 973, 976.

cided that he should not be, refused to reopen his classification. This decision in itself denied Robertson important avenues of appeal within the Selective Service system.

Our opinion is entirely congruent with the decision reached by another panel of this Court in McCoy v. United States, 5 Cir., Nov. 12, 1968, 403 F.2d 896. In that case, the local board in effect reopened the registrant's classification and received evidence concerning his right to reclassification. It then decided not to reclassify him, and his case was heard on appeal. Thus the matter was treated as if his classification had been reopened. Both a personal appearance and an administrative appeal *de novo* were granted the registrant, and the procedure required by the Regulations was followed.

 With respect to substantive review of local board decisions, we are in full agreement with the rule there applied: "[w]e look only to see if there was a basis in fact to support the ultimate classification." Evaluation of the evidence on classification is the responsibility of the local board, and courts should not invade that function so long as the local board's action does indeed have a basis in fact. However, for the guidance of local boards and in explanation of our conclusion that a prima facie case for *reopening* was made here, while *reclassification* was properly denied in *McCoy*, we point out that, although both Robertson and McCoy were called "Vacation Pioneers," there was an appreciable difference in their ministerial work. McCoy told his local board he worked "approximately fifty hours each month" and testified later at his trial that he averaged about 76 hours per month, the whole while having regular

secular employment. The evidence Robertson submitted to the Board indicated that he spent at least 100 hours per month performing duties that are usually considered ministerial; McCoy spent a substantial portion of his time distributing publications of the Watchtower Bible and Tract Society. Robertson eventually became a Regular Pioneer; McCoy did not. In *McCoy* the Court found that the registrant did not qualify within the hierarchy of his own religious sect to be considered a minister. We cannot conclude from the record in this case that this was the situation with respect to Robertson.

These differences may not require the local board to reclassify Robertson as a minister, and upon further investigation by the Board, the record as a whole may support a conclusion that he should be denied reclassification. But the evidence submitted to the local board was sufficient to require it to reopen Robertson's classification.

*II. The Board applied an erroneous legal standard in determining whether Robertson was a minister.*

 A decision of a local draft board is expressly made "final" unless appealed, (in which case the decision of the appeal board is expressly made "final").[25] The Board's decision, however erroneous, is not subject to judicial review if made in conformity with the Regulations,[26] unless it was so arbitrary and capricious as to be "contrary to the spirit of the Act and foreign to our concepts of justice,"[27] thus violative of due process of law.[28] But finality is accorded only to the Board's findings of fact; the Board's interpretation of the law is subject to judicial review.[29]

 The Universal Military Training and Service Act[30] provides that reg-

25. 50 App.U.S.C. § 460.

26. Estep v. United States, 1946, 327 U.S. 114, 122, 66 S.Ct. 423.

27. Dickinson v. United States, 1953, 346 U.S. 389, 397, 74 S.Ct. 152, 158.

28. Miller v. United States, 9 Cir., 1967, 388 F.2d 973.

29. Pate v. United States, 5 Cir., 1957, 243 F.2d 99; United States v. Stepler, 3 Cir., 1958, 258 F.2d 310; United States v. Hendersen, 7 Cir., 1955, 223 F.2d 421.

30. 50 App.U.S.C. § 456(g).

ular or duly ordained ministers shall be exempt from military service, and it sets forth definitions of the terms "regular minister" and "duly ordained minister." [31] In *Fitts v. United States*,[32] we set out the criteria that must be used to determine whether a member of the Watchtower Bible and Tract Society meets these definitions. In each case the Board's decision must be based on the facts presented, not on the arbitrary application of labels.

▆▆▆▆ Here the Board looked solely to the kind of certificate Robertson had. It did not review and evaluate Robertson's duties and activities. A registrant is not entitled to be classified as a minister merely because his church calls him one.[33] But a registrant who meets the statutory requirements does not lose ministerial status simply because his church calls him a "Vacation Pioneer" minister rather than a "Regular Pioneer."

▆▆▆ In *Application of Kanas*,[34] a Jewish Cantor presented evidence that he was performing ministerial functions.

The Second Circuit ruled that he could not be denied a religious exemption simply because his title was "Cantor and Music Director." Doubtless some Vacation Pioneers are not entitled to ministerial deferments,[35] but each registrant's eligibility can be properly determined only after an evaluation of his individual activities.[36]

The destinies of our citizens rest increasingly in the hands of administrative agencies. Recognizing the difficulties the citizen confronts in dealing with government officers who determine his future by a process that may be unknown or indeed unknowable to him, Congress has required the promulgation of rules governing agency procedures, and their publication in a form that makes them available at least to the determined.[37] A citizen should be grateful when he meets with the courtesy and good intentions displayed by Robertson's local board. But he is entitled to more. The congressional mandate can be obeyed only by proper interpretation of statutory standards. And, having

31. The statute defines the term "duly ordained minister of religion" as a person who has been both ordained in accordance with the religious doctrine of his church and who preaches and teaches the principles of religion as his regular and customary vocation. It defines the term "regular minister of religion" as one who, without having been formally ordained as a minister, is recognized by his church as a regular minister. See Section 16, Title I, of the Military Selective Service Act of 1967, 50 App.U.S.C. § 466(g). Thus either formal ordination by the church, or recognition by it is requisite to classification as a minister. In addition, however, the statute requires that the person seeking classification as a minister be engaged in ministerial duties as his regular and customary vocation.

32. 1964, 334 F.2d 416. We stated: "First, the registrant must have the ministry as a vocation * * *. Second, religious affairs must occupy a substantial part of the registrant's time and they must be carried on with regularity. * * * Finally, and most important, in order to obtain an exemption a registrant must stand in the relation of a minister to a congregation or in an equivalent relation

as a recognized leader of a group of lesser members of his faith. One of the basic purposes of the exemption is to guard against a flock being left without its shepherd."

33. See, for example, the discussion in United States v. Stidham, W.D.Mo., 1965, 248 F.Supp. 822.

34. 2 Cir., 1967, 385 F.2d 506.

35. Some Vacation Pioneers, however, are entitled to ministerial deferments. For example, see United States v. Dillon, D.C. Or., 1968, 294 F.Supp. 38, where the court held that the defendant, a Vacation Pioneer who had devoted 130 hours per month to ministerial duties and 25 hours per month to secular employment for the past 14 months, was entitled to a ministerial deferment.

36. In Striker v. Resor, D.C.N.J., 1968, 283 F.Supp. 923, the court held that a draft board acted unlawfully in applying an across the board rule that no separated man is eligible for a III-A deferment, instead of judging the individual facts of each case.

37. 32 C.F.R. §§ 1600–1690.23.

properly interpreted its duties, an agency must follow the procedures that it has itself set forth. To require less is to invite unlimited ad hoc determinations in disregard of orderly processes of law.

For these reasons, the conviction must be reversed without prejudice to the right of the local board to classify Robertson according to his present status.

COLEMAN, Circuit Judge (dissenting).

I respectfully dissent. It is my view that the decision of the majority in this case is directly in conflict with what this Court held in McCoy v. United States of America, [decided November 12, 1968] 403 F.2d 896. Moreover, if the conflict did not exist, I would hold that there was a substantial basis in fact for the denial of ministerial exemption to this appellant. I think the advice given by Colonel Weeks was correct, has several times been specifically approved by this Court, and meets the very standards requested by Jehovah's Witnesses.

I would affirm the judgment of conviction.