George A. HUNT, Jr., Selective Service No. 9-45-45-1035, Appellant,

v.

LOCAL BOARD NO. 197.

No. 18076.

United States Court of Appeals, Third Circuit.

Argued Feb. 3, 1970.

Reargued Oct. 13, 1970.

Decided Feb. 5, 1971.

Gibbons, Circuit Judge, concurred in result and filed opinion.

Hastie, Chief Judge, concurred in result and filed opinion.

Freedman, Circuit Judge, filed an opinion in which Seitz and Adams, Circuit Judges, joined.

Aldisert, Circuit Judge, dissented and filed an opinion in which Van Dusen, Circuit Judge, joined.

John David Egnal, Egnal and Egnal, Philadelphia, Pa., for appellant.

Robert V. Zener, Dept. of Justice, Washington, D. C., for appellee.

Before HASTIE, Chief Judge, and FREEDMAN, SEITZ, VAN DUSEN, ALDISERT, ADAMS and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

For different reasons, stated in separate opinions, five judges constituting a majority of the court have concluded that the judgment of the district court dismissing the appellant's complaint cannot stand. Judges Freedman, Seitz and Adams think that the uncontested facts are such that we should not only reverse the dismissal of the complaint but also order that on remand judgment be entered for the appellant requiring that he be accorded selective service reclassification as III–A. Judges Hastie and Gibbons think that we should do no more than require that the district court consider and dispose of this controversy on its merits.

To achieve an otherwise lacking majority for a particular disposition of the appeal,[1] Judges Freedman, Seitz and Adams join Judges Hastie and Gibbons in voting for the less comprehensive disposition; namely, reversal and remand for appropriate action on the merits of the controversy.

It may be that, in the light of the circumstances pointed out in our several opinions, the parties will be able to agree upon a consent judgment that will obviate the necessity for adversary proceedings in the district court.

The judgment will be reversed and the cause remanded for consideration and disposition on the merits.

GIBBONS, Circuit Judge (concurring in the result).

Plaintiff appeals from the order of the district court dismissing his complaint pursuant to Rule 12(b) (1), Federal Rules of Civil Procedure, for want of jurisdiction over the subject matter. The complaint claims jurisdiction under 28 U.S.C. § 1331 (1964) (federal questions) and under 28 U.S.C. § 1361 (1964) (mandamus against a federal official) and prays for relief appropriate under both sections. The complaint alleges that in June, 1968 plaintiff was classified I–A by the defendant Local Board; that he appealed this classification on the ground that he was a conscientious objector; that while that appeal was pending he notified the defendant Local Board of changed conditions which *prima facie* entitled him to a III–A deferment and requested that the Local Board reopen his classification; that the Local Board refused to reopen. The complaint does not specify what changed conditions were called to the attention of the Local Board. It alleges that the failure of the Local Board to reopen plaintiff's classification and consider his *prima facie* claim to a III–A deferment was a denial of his constitutional rights.

No answer was filed. Instead the defendant Local Board filed a motion under Rule 12(b) asserting:

"(1) The court lacks jurisdiction of the person of the defendant.

(2) The court lacks jurisdiction of the subject matter.

(3) The venue of the action is improper.

(4) Service of process was insufficient.

(5) The complaint fails to state a claim upon which relief can be granted.

---

1. *Cf.* Screws v. United States, 1945, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495.

(6) Plaintiff has an adequate remedy at law."

Neither party filed any affidavits on the motion. At the conclusion of the argument the district court invited the plaintiff "to complete your record as to what you are going to prove on the merits," and eight exhibits, letters from the file of the defendant Local Board, were marked in evidence without objection. There was no waiver, however, by either party of the right to a final hearing after answer in the event of a ruling on the Rule 12(b) motion favorable to the plaintiff. At best there was a partial presentation by plaintiff of evidence in support of his Rule 65 motion for a preliminary injunction. The district court did not rule on that motion.

The exhibits disclose that plaintiff, who had received a II–S (student deferment) classification, was classified I–A in June of 1968. He appealed that classification to the State Appeal Board on the ground that he was entitled to a I–O (conscientious objector) classification. By letter on November 7, 1968 he notified the Local Board of his wife's pregnancy. This letter was supplemented by three letters from a physician confirming the pregnancy, the expected date of confinement in June of 1969, and certain other of the wife's health problems. When the State Appeal Board decided against him on his I–O claim plaintiff on April 7, 1969 requested a III–A classification, asserting both his impending fatherhood and hardship to his wife if he were to be drafted. The Local Board on May 2, 1969 advised him that it would not reopen. Although it does not appear in the record before the district court, the parties had advised this court that plaintiff is now a father. Neither plaintiff's fatherhood claim nor his hardship claim are referred to expressly in the complaint. It refers only generally to "changed conditions, which, *prima facie*, entitle Plaintiff to a 3–A deferment."

Defendants relied in the district court on lack of jurisdiction over the subject matter because of § 10(b) (3) of the Selective Service Act of 1967, 50 App. U.S.C. § 460(b) (3) (Supp. IV 1969). The order appealed from provided:

"ORDERED that defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b) (1) is GRANTED."

The district court opinion, although it makes reference to the nature of the III–A deferment claims asserted by plaintiff to the Board, is expressly limited to a determination of lack of subject matter jurisdiction. It makes no determination on any of the remaining grounds advanced by the defendant. It make no determination (aside from that respecting subject matter jurisdiction) that the allegations of the complaint fail to state a cause of action. The district court did not treat the motion as one under Rule 12(b) (6) which it converted to Rule 56 motion. It expressly limited its order to granting a motion under Rule 12(b) (1).

Judge Freedman and the judges who concur in his opinion, looking at the exhibits which were marked at the hearing on the preliminary injunction, conclude that the Local Board acted solely on the mistaken legal ground that any II–S classification received after July 1, 1967, even one based on a post-baccalaureate student status, prevented a III–A fatherhood classification. See Gregory v. Hershey, 311 F.Supp. 1 (E.D.Mich.S.D.1969). But on this sparse record it is not clear that the rejection of the fatherhood claim was the sole basis of the Board's action, nor do we know for certain whether the plaintiff's student deferment was pre- or post-baccalaureate. I would not assume original rather than appellate jurisdiction to decide the fatherhood issue which was never decided by the district court.

Judge Aldisert, and Judge Van Dusen who concurs in his opinion, also look at the contents of the exhibits to reject the plaintiff's fatherhood claim. They find that the exhibits do not evidence that appellant's II–S classification was at a post-baccalaureate stage, and that appellant therefore failed to carry the burden

of his immunity from service. They also would affirm a final summary judgment which was never made in the district court. But the more fundamental defect in their position is that it ignores the allegations of the complaint. Plaintiff complains that the Local Board refused to reopen. Thus, he says, he was denied the procedural opportunity to carry the burden of establishing his entitlement to a deferment. We cannot, by looking at those parts of the registrant's selective service file which are in the record, conclude that he has failed to meet a burden which he was never given an opportunity to meet.

On the hardship claim Judges Aldisert and Van Dusen confront the issue which was framed by the complaint and the Rule 12(b) motion and which was decided by the district court. That issue is whether, assuming the truth of the allegation that the Local Board failed to reopen after being notified of changed conditions which *prima facie* entitled plaintiff to a III–A deferment, § 10(b) (3) barred pre-induction judicial review. It is on those pleadings that the same issue is presented here, since the district court order is expressly limited to a decision of the Rule 12(b) (1) motion. Since, assuming subject matter jurisdiction, the allegations of the complaint might well be controverted, I see no appropriate way to avoid the decision of that issue. Judge Freedman and the judges who concur in his decision distinguish between the undiluted question of law presented to the Local Board by the fatherhood claim and the mixed question of law and fact presented by the hardship claim. An erroneous Local Board decision of the former, they say, may give rise to an opportunity for pre-induction judicial review. The refusal to reopen and consider the latter apparently would not. I do not think the opportunity to draw such a line is presented on this record.

Plaintiff was already classified when the changed circumstances occurred on which he relied for his change of classification from Class I–A to Class III–A.

Class III–A includes persons deferred for reason of family relationship, 32 C.F.R. § 1522.30(a), and for reasons of extreme hardship, 32 C.F.R. § 1622.30(b). The regulations creating these classifications were adopted pursuant to 50 U.S.C. App. § 456(h) (2) (Supp. IV 1969), which by virtue of the Universal Military Training Act of June 19, 1951, ch. 144, § 1(*o*), 65 Stat. 84, limited dependency deferments for married men who had no dependents other than a wife to cases of extreme hardship.

The Local Boards are creatures of the Selective Service Act. Their jurisdiction is defined in 50 U.S.C. App. § 460(b) (3) (Supp. IV 1969):

"Such local boards, or separate panels thereof each consisting of three or more members, shall, under rules and regulations prescribed by the President, have the power within the respective jurisdictions of such local boards *to hear and determine, subject to the right of appeal to the appeal boards herein authorized,* all questions or claims with respect to inclusion for, or exemption or deferment from, training and service under this title * * *, of all individuals within the jurisdiction of such local boards. The decisions of such local board shall be final, except where an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe." (emphasis added)

Regulations have been adopted which set forth the procedure for taking an appeal to the appeal boards, which the same statute creates in each federal judicial district. 50 U.S.C. App. § 460(b) (3) (Supp. IV 1969); 32 C.F.R. pt. 1626 (1969). Recognizing that the status of a registrant is subject to change, the regulations provide that no classification is permanent. 32 C.F.R. § 1625.1(a) (1969), and provide a mechanism for reopening the registrant's classification, 32 C.F.R. pt. 1625 (1969). The sections of pt. 1625 relevant to this case provide:

"The local board may reopen and consider anew the classification of a reg-

istrant (a) upon the written request of the registrant, * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; * * * " 32 C.F.R. § 1625.2 (1969).

"When a registrant * * * files with the local board a written request to reopen and consider anew the registrant's classification and the local board is of the opinion that the information accompanying such request fails to present any facts in addition to those considered when the registrant was classified or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification, it shall not reopen the registrant's classification * * *." 32 C.F.R. § 1625.4 (1969).

If the Local Board determines that the information submitted does not warrant reopening, the regulations provide no right of appearance and no right of appeal.

Thus, under the regulations, establishment of a right to deferment because of changed circumstances following an initial classification depends in the first instance on the *ex parte* determination by a Local Board whether or not to reopen. This determination is not appealable to an appeal board despite the fact that Local Boards are, under the statute, authorized only "to hear and determine, subject to the right of appeal to the appeal boards herein authorized." 50 U.S.C. App. § 460(b) (3) (Supp. IV, 1969)

The respondents would have us hold that the language "subject to the right of appeal to the appeal boards herein authorized" either has no meaning or is limited by the later language:

"The decision of such local boards shall be final except where an appeal is authorized and is taken in accord-

ance with such rules and regulations as the President may prescribe."

The right of administrative appeal, in other words, would depend on whether and to what extent the President decides to allow it. In this instance, respondents contend, the President has seen fit not to allow it. He has permitted the Local Boards, by refusing to reopen, to eliminate administrative appeal.

As I will develop hereinafter, such a construction of the statute, when read together with a prohibition of pre-induction judicial review, raises very serious questions of due process and separation of powers. In fact, however, the courts have not so construed the statute.

This reclassification procedure has been before the courts in a number of cases. It is now firmly established that where a registrant presents to a Local Board facts which *prima facie* set forth a basis for reclassification the local board *must* reopen. Failure to reopen where a *prima facie* case for reclassification is claimed has consistently been held to be a denial of procedural due process. Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970); United States v. Turner, 421 F.2d 1251 (3d Cir. 1970); Davis v. United States, 410 F.2d 89 (8th Cir. 1969); United States v. Grier, 415 F.2d 1098 (4th Cir. 1969); Petrie v. United States, 407 F.2d 267 (9th Cir. 1969); Fore v. United States, 395 F.2d 548, 554 (10th Cir. 1968); Robertson v. United States, 404 F.2d 1141 (5th Cir. 1968), rev'd *en banc* on other grounds, 417 F.2d 440 (1969); Vaughn v. United States, 404 F.2d 586 (8th Cir. 1968), vacated on other grounds sub nom. Morico v. United States, 399 U.S. 526, 90 S.Ct. 2230, 26 L.Ed.2d 776 (1970); Miller v. United States, 388 F.2d 973 (9th Cir. 1967); United States v. Freeman, 388 F.2d 246 (7th Cir. 1967); Townsend v. Zimmerman, 237 F.2d 376 (6th Cir. 1956); Stain v. United States, 235 F.2d 339 (9th Cir. 1956); United States v. Ransom, 223 F.2d 15 (7th Cir. 1955); United States v. Vincelli, 215 F.2d 210 (2d Cir. 1954);

United States ex rel. Berman v. Craig, 207 F.2d 888 (3d Cir. 1953); United States v. Burlich, 257 F.Supp. 906, 911 (S.D.N.Y.1966).

While all but one of these cases involved post- rather than pre-induction review, all are quite directly in point insofar as the statutory jurisdiction of Local Boards is involved. All hold that despite the permissive or discretionary language of 32 C.F.R. § 1625.2 a Local Board must, when faced with a *prima facie* claim of changed circumstances calling for reclassification, reopen and afford administrative appellate review. That part of the statute on which the respondents rely to establish that appellate review exists only when the President authorizes it makes no distinction between post- and pre-induction judicial review.

The *Mulloy* case would seem to put all doubts to rest, for in it Justice Stewart, for a unanimous court, writes:

> "Though the language of 32 CFR § 1625.2 is permissive, it does not follow that a Board may arbitrarily refuse to reopen a registrant's classification." 398 U.S. at 415, 90 S.Ct. at 1770.

Thus it is beyond argument that a Local Board is obliged to reopen a classification when presented with a *prima facie* claim for reclassification. The remaining question is whether pre-induction judicial review is available when a Local Board fails to afford this opportunity.

Respondents rely principally on Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968). That case is the slenderest of reeds. In the first place that per curiam opinion dealt with a situation entirely unrelated to the instant case. It did not involve reopening. The registrant was afforded a hearing before the Local Board on his conscientious objector claim. He was afforded the full panoply of *de novo* administrative appeal rights applicable to conscientious objector claims before the 1967 amendments to the Selective Service Act. There was no charge of procedural irregularity or abuse of discretion. Plaintiff's only contention was that the administrative proc-

ess had made an erroneous determination of a factual issue after all administrative hearing and appeal safeguards were afforded. The case summarily reversed a district court decision that § 10(b)(3) was unconstitutional even as so applied. Thus reliance on Clark v. Gabriel is justified only if the nonavailability of administrative review following a refusal to reopen can be ignored. To liken an administratively nonreviewable refusal to reopen to a reclassification determination which was followed by full administrative review, including a *de novo* investigation and interview, we would have to ignore the *Mulloy* decision which said:

> "Even if the local board denies the requested reclassification [after reopening], there is a crucial difference between such board action and a simple refusal to reopen the classification at all." 398 U.S. at 414, 90 S.Ct. at 1770.

The Supreme Court observed, further, that precisely because judicial review is postponed in the Clark v. Gabriel situation, "the opportunity for full administrative review is indispensible to the fair operation of the Selective Service System." Id., 398 U.S. at 416, 90 S.Ct. at 1771.

In the second place, the language of the per curiam opinion in Clark v. Gabriel on which the respondents place such heavy reliance, represents the thinking of only three members of that Court, Justices Warren, Harlan and Marshall. Justice Black voted against summary reversal. Justice Douglas concurred on a very narrow ground, and his brief opinion supports pre-induction judicial review where the Board has abused its discretion. A refusal to reopen and reconsider a *prima facie* claim of change in circumstances which would result in a reclassification has repeatedly been held to be an abuse of discretion. Justices Brennan, Stewart and White concurred in the judgment, but not in the opinion, for the reasons set forth in Justice Stewart's dissent in Oestereich v. Selective Service System Local Bd., 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). They concurred,

in other words, not because the distinction between *Oestereich* and Clark v. Gabriel suggested in the per curiam opinion in the latter case was valid, but because in their view *Oestereich* was wrongly decided. Thus the per curiam opinion on summary reversal in Clark v. Gabriel affords no guidance whatsoever to the proper construction of § 10(b) (3).[1]

In *Oestereich* the Supreme Court rejected a literal reading of § 10(b) (3) which would have barred judicial review even in a post-induction habeas corpus case. The case was remanded to a district court so that petitioner might have the opportunity to prove that he had been ordered to report for induction pursuant to the delinquency regulations, 32 C.F.R. pt. 1642, when he was entitled to an exemption as an enrolled divinity student.

The Second Circuit, in Breen v. Selective Service Local Bd., 406 F.2d 636 (2d Cir. 1969), rev'd, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970), assumed that the *Oestereich* interpretation of § 10(b) (3) could somehow be circumscribed. It drew a distinction between reclassification of registrants seeking statutory exemption (such as divinity students, 50 U.S.C. App. 456(g)) and that of registrants seeking deferments (such as students, 50 U.S.C. App. § 456 (h) (1)). The Supreme Court rejected this distinction, holding that the *Oestereich* exception was equally available to

either category of registrant. Justice Black, writing for the Court said:

"In both situations a draft registrant who was required by the relevant law not to be inducted was in fact ordered to report for military service. In both cases the order for induction involved a 'clear departure by the Board from the statutory mandate,' Oestereich, *supra*, [393] at 238, [89 S.Ct. [414], at 416, 21 L.Ed.2d 402, and in both cases § 10(b) (3) of the Act should not have been construed to require the registrant to submit to induction or risk criminal prosecution to test the legality of the induction order." 396 U.S. at 467–468, 90 S.Ct. at 666.

Both in *Oestereich* and in *Breen* Justice Harlan suggested a somewhat different formulation of the exceptions to § 10(b) (3) than that announced in the opinion of the Court. In *Oestereich* he suggested that a challenge to the administrative procedure itself was beyond the competence of the Selective Service Boards to hear and determine and therefore outside § 10(b) (3). Oestereich v. Selective Service System Local Bd., 393 U.S. at 242, 89 S.Ct. 414, 21 L.Ed.2d 402. In *Breen* he wrote:

"The Court's opinion here, as in Oestereich v. Selective Service [System Local] Bd., 393 U.S. 233 [89 S.Ct. 414, 21 L.Ed.2d 402] (1968), appears to make the availability of pre-induction

---

1. The *Mulloy* case sheds light on the limited precedential value of Clark v. Gabriel for present purposes. It was, of course, a post-induction case. But in listing the authorities establishing the *prima facie* claim test for reopening a classification it included not only most of the post-induction cases listed hereinabove but also Justice (then Judge) Stewart's own opinion in Townsend v. Zimmerman, *supra*, which is a pre-induction case. Mulloy v. United States, *supra*, 398 U.S. at 415 n. 6, 90 S.Ct. 1766, 26 L.Ed.2d 362. This reference to Townsend v. Zimmerman must be contrasted with the reference to the same case in Justice Stewart's dissenting opinion in Oestereich v. Selective Service System Local Bd., 393 U.S. 233, 247 n. 4, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). There he noted that the

enactment of § 10(b) (3) indicated specific congressional disapproval of exceptions such as Townsend v. Zimmerman to the rule against pre-induction judicial review laid down in Witmer v. United States, 348 U.S. 375, 377, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917 (1944), and Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944). His dissenting view did not prevail and in *Mulloy*, for a unanimous court he cited Townsend v. Zimmerman approvingly. While I do not claim that this footnote reference was a binding precedent for the instant case, at the very least it negates any indication that Clark v. Gabriel overruled Townsend v. Zimmerman.

review turn on the lawfulness of the draft board's action or, to put it another way, on the certainty with which the reviewing court can determine that the registrant would prevail on the merits if there were such judicial review of his classification. On the other hand, under the test put forward in my separate opinion in *Oestereich,* 393 U.S. 239–245, [89 S.Ct. 417, 420–421], the availability of pre-induction review turns, not on what amounts to an advance decision on the merits, but rather on the nature of the challenge being made.

"In *Oestereich,* the registrant sought pre-induction review of claims that the delinquency procedure employed by the board was 'not authorized by any statute,' was 'inconsistent with his statutory exemption,' and was 'facially unconstitutional,' 393 U.S., at 239, [89 S.Ct. at 417]." 396 U.S. at 468, 90 S.Ct. at 666.

Whether under the test suggested by Justice Harlan or under that suggested by the majority opinions in *Oestereich* and *Breen,* it would seem that pre-induction judicial review is available of refusals to reopen when a *prima facie* claim has been filed. I can perceive no valid distinction between the challenge to the delinquency reclassification procedures considered in *Breen* and *Oestereich* and the challenge to the reopening procedures made here. As the case comes before us, plaintiff has given notice of a *prima facie* change in conditions entitling him to reclassification. He complains that the reclassification procedures followed by the Local Board, which *ex parte* denied him a hearing and an appeal, are both lacking in statutory authorization and violative of constitutional rights. That challenge to 32 C.F.R. § 1625.4 (1969) is no different in kind

than the challenge to 32 C.F.R. pt. 1642 (1969) permitted in those cases.

Moreover, Estep v. United States, *supra,* and Falbo v. United States, *supra,* relied on by respondents, are not controlling. They only decided that a previous statute, § 10(a) (2) of the Selective Training and Service Act of 1940, 54 Stat. 893, did not, despite its broad language to the effect that decisions of Local Boards were final except for administrative review, prohibit judicial review at some point. *Estep* and *Falbo,* by so construing that statute, as well as Witmer v. United States, *supra,* and Billings v. Truesdell, *supra,* avoided the decision of the question whether Congress could constitutionally in the same statute (1) permit a local administrative agency to make an *ex parte* determination which is unreviewable in any administrative appellate proceeding if the local agency so decides, and (2) prohibit any review of the factual or legal correctness or even the fundamental fairness of that decision except in a criminal enforcement or post-induction habeas corpus proceeding. The Supreme Court has avoided deciding this same issue by its construction of § 10(b) (3) in *Oestereich* and *Breen.*[2] It cannot be avoided if we accept the interpretation of § 10(b) (3) urged by the respondents in this case.

Administrative appellate review may be a sufficient due process substitute for pre-induction judicial review. But discretionary elimination by the original administrative agency of any administrative review, coupled with postponement of judicial review until a criminal trial or a post-induction habeas corpus proceeding presents a much more complex due process issue. It is true that Congress has the power to give, withhold and restrict the jurisdiction of the lower federal courts. Ex parte Mc-

---

2. In Boyd v. Clark, 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 511 (1969), the Supreme Court also carefully avoided deciding whether the jurisdictional amount requirement of 28 U.S.C. § 1331 would bar judicial review in selective service cases. It has never, so far as I know,

explicitly addressed itself to this issue, which has not been raised in this case, perhaps assuming as I do, and as Judge Hastie does, that 28 U.S.C. § 1361 is a sufficient jurisdictional basis in this and similar cases.

Cardle, 7 Wall. 506, 19 L.Ed. 264 (1868), and Cary v. Curtis, 3 How. 236, 245, 11 L. Ed. 576 (1845). Both this proposition and those cases are somewhat beside the point, however, for while Congress may have more or less unlimited power over the jurisdiction of the lower federal courts, the extent of its authority to eliminate or postpone *any* judicial power to test the due process of an unreviewable administrative decision has not been determined. Taken literally, § 10(b) (3) is applicable to *all* courts. Article III, § 2 says that the judicial power of the United States "shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made * * *." By interpreting § 10(b) (3) as postponing judicial review only where the administrative remedies have been fully and legally afforded to the registrant in a non-arbitrary manner, the Supreme Court in *Oestereich* and *Breen* has avoided the necessity of determining the full meaning of Article III, § 2 in the face of what may be a due process claim.[3] When *Oestereich, Breen* and *Mulloy* as read together point out a path which avoids a constitutional issue, that path should be followed. The *Mulloy* case, read in conjunction with *Oestereich* and *Breen*, indicates that the deprivation of administrative review by a local board which couches its decision on a *prima facie* claim in the guise of a refusal to reopen is an arbitrary action subject to pre-induction judicial review. If this is not so, § 10 (b) (3) may well be unconstitutional. *Clark v. Gabriel, supra*, holds no more than that postponement of judicial review is constitutional where administrative review has in the meantime been afforded.

It seems to me that the correct interpretation of 50 U.S.C. App. § 460(b) is this:

(1) The power of a Local Board to decide whether a change in circumstances entitled a registrant to a new classification is subject to administrative appeal whenever a *prima facie* claim is presented.

(2) The refusal of a Local Board to reopen when presented with such a *prima facie* claim is an abuse of discretion subject to judicial review. Mulloy v. United States, *supra*, and cases therein cited.

(3) Such an abuse of discretion is a clear legal error and judicial review of that legal error is available not only in post-induction habeas corpus and criminal cases but also in pre-induction mandamus or injunction cases. Oestereich v. Selective Service Bd., *supra*; Breen v. Selective Service Bd., *supra*.

A disturbing aspect of the construction of governing cases set forth in Judge Aldisert's opinion is its potential impact on post-induction judicial review. It suggests an interrelationship between Clark v. Gabriel and *Mulloy* which makes a decision to reopen "discretionary" in deferment claims cases such as hardship, where an evaluation of the claim (not the facts) "inescapably involves a determination of fact and an exercise of judgment." If this is true of a hardship claim, *a fortiori* it is true of a conscientious objector claim. By reviewing such Local Board refusals to reopen as discretionary, and the exercise of such discretion as beyond the scope of administrative review mandated by the statute, one might invite a reviewing court in a criminal or habeas corpus case to uphold such refusals to reopen on the same ground. It is quite difficult to reconcile any such unreviewable Local Board discretion with the holding in *Mulloy* that a Local Board must reopen unless a *prima facie* claim is "conclusively refuted" by the file. 398 U.S. at 416, 90 S.Ct. 1766, 26 L.Ed. 2d 362. I view the Mulloy standard for judicial review as looking no further than the legal sufficiency of the new facts alleged. This is exactly what federal courts always do on a motion under Rule 12(b) (6). Such a decision is nei-

---

3. See Oestereich v. Selective Service System Local Bd., 393 U.S. 233, 243 n. 6, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968) (Harlan, J., concurring).

ther factual nor discretionary. Nothing in the language of § 10(b) (3) or in the opinions in *Oestereich* and *Breen* suggest that a different scope of review of the legal sufficiency of the facts alleged applies in pre-versus post-induction cases.

The government urges in virtually every pre-induction selective service case that the interpretation of the statute suggested by the plaintiff will invite extensive judicial interference with the operation of the Selective Service System. Always we are reminded of the plight of the party, not before the court, who must serve in place of the registrant who obtains relief. But this interference with the operation of the system arises not because of judicial review but because of the nature of a selective rather than a universal system. Congress has chosen a selective service system. Having made that choice it may not subject individual registrants to methods of selection which fail to comport with due process standards. If it does so, the congressional power to raise armies may run afoul of the judicial power of the United States to enforce constitutional standards of due process of law in appropriate cases. In my view an adequate means of administrative review is a due process *quid pro quo* for postponement of judicial review until a criminal or other post-induction proceeding.[4]

Judge Hastie's position with respect to the disposition of this case is essentially no different from mine, except that he would read § 10(b) (3) as possibly barring suits for injunction but inapplicable to mandamus actions. If that position commanded a majority I would concur in his opinion and, as he does, leave to another occasion a discussion of the due process and jurisdictional issues. Since we are unable to agree on a majority

opinion I feel it is appropriate to express the view that the *Oestereich-Breen* interpretation of § 10(b) (3) is not limited to situations in which mandamus would be available.

I would reverse the order of the district court and remand for further proceeding to determine whether plaintiff had notified the defendant Local Board of changed conditions which, *prima facie*, would entitle him to a III–A deferment. If the court should determine that he had, then I would require that the district court order the Board to reopen plaintiff's classification and hold a hearing on his claim for deferment.

FREEDMAN, Circuit Judge.

I would reverse the judgment of dismissal for want of jurisdiction. It denies relief to a registrant on the ground that he has not carried the burden of proving his right to a III–A fatherhood classification even though the decisive facts which establish his claim are now acknowledged and necessarily must be present in his selective service file.

When he made his application for a III–A fatherhood classification the registrant had no cause to believe that he should draw the Board's attention to the fact, now known to be decisive,[1] that his II–S classification was based on a post-baccalaureate student status. The Board, however, as it now appears, acted solely on the mistaken legal ground that any II–S classification received after July 1, 1967, even one based on a post-baccalaureate student status, prevented a III–A fatherhood classification. That this was the basis of its action is clear-cut from the record. Its letter of rejection states: "Since you had requested and received a II–S deferment after July 1, 1967, you are not entitled to a III–A for fatherhood."[2] The Board, however,

---

4. In his concurring opinion in Oestereich v. Selective Service System Local Bd., *supra*, Justice Harlan noted that the opportunity for a hearing and administrative appeals prior to induction was one of the major considerations which impelled Congress to postpone judicial review.

393 U.S. at 240–241, 89 S.Ct. 414, 21 L.Ed.2d 402.

1. See Gregory v. Hershey, 311 F.Supp. 1 (E.D.Mich.1969).

2. Letter of Local Board No. 197, Appendix 23a.

is bound by the law as it is later declared to have been applicable in the proper classification of a registrant. The registrant is not bound by the Board's error of legal interpretation. Indeed, in view of the Board's relationship to him which requires the utmost fairness and helpfulness in deciding his claim as a matter of law,[3] it should itself have sought out the vital factor which required his III–A fatherhood classification.

This factor is not in dispute. It was agreed by the parties at bar that the registrant's II–S classification was based on his status as a post-baccalaureate student. There is no necessity for the Board to examine its file to determine the fact, for it is now made conclusive by the stipulation. It therefore seems to me unjust to affirm the denial of relief when the agreement of the parties shows that as a matter of law the registrant was entitled to a III–A fatherhood classification.

There remains then the question whether § 10(b) (3) of the Military Selective Service Act of 1967,[4] prevents pre-induction judicial review of the Board's mistake of law.

There is involved in the present case no element of discretionary judgment or evaluation of evidence; there is simply an undiluted question of law, which is an established basis for pre-induction review. See Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 467–468, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970); Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968).[5] The characterization in *Oestereich* of the conduct of a board which justifies pre-induction judicial intervention as "blatantly lawless" (393 U.S. at 238, 89 S.Ct.

414) is intended as a description of a clear-cut error of law. It does not require an intentional defiance of the law. Indeed, the phrase is used in the opinion as the equivalent of "basically lawless." (393 U.S. at 237, 89 S.Ct. 414)

Here the Board took a view of a highly debatable legal issue which I believe was the wrong one. Its action was lawless in the sense that it was contrary to the correct rule of law. It is of no material significance that in *Oestereich* the registrant sought a statutory exemption, whereas here he seeks a deferment. *Breen,* supra, 396 U.S. at 467, 90 S.Ct. 661, 24 L.Ed.2d 653. Nor is it significant that the applicable law is established by a selective service regulation rather than by the statute. See *Breen,* supra, 396 U.S. at 467, 90 S.Ct. 661, 24 L.Ed.2d 653; Shea v. Mitchell, 421 F.2d 1162, 1165 (D.C.Cir. 1970).

Since the agreement of the parties clearly establishes the registrant's right to a III–A fatherhood classification, I would reverse the judgment of dismissal and remand the case to the district court with direction to order the Board to afford him that classification. I therefore do not reach the important conflict presented by the opinions of Judge Aldisert and Judge Gibbons.

SEITZ and ADAMS, Circuit Judges, join in this opinion.

HASTIE, Chief Judge.

Section 1361 of title 28, United States Code, explicitly grants the district courts "original jurisdiction of any action in the nature of mandamus to compel * * * [any federal officer or agency] to perform a duty owed to the plaintiff." Invoking the district court's jurisdiction under that section, the com-

---

3. United States v. Turner, 421 F.2d 1251 (3 Cir. 1970).

4. 50 U.S.C.App. § 460(b) (3).

5. Mr. Justice Harlan, concurring in *Breen,* summarized the holdings in *Breen* and *Oestereich,* saying:

"The Court's opinion here, as in Oestereich v. Selective Service [System Local] Bd., 393 U.S. 233 [89 S.Ct. 414,

21 L.Ed.2d 402] (1968), appears to make the availability of pre-induction review turn on the lawfulness of the draft board's action or, to put it another way, on the certainty with which the reviewing court can determine that the registrant would prevail on the merits if there were such judicial review of his classification. * * *" *Breen,* supra, 396 U.S. at 468, 90 S.Ct. at 666.

plaint in this case includes a claim that the plaintiff is entitled to a peremptory writ of mandamus requiring federal officers, the members of the Selective Service Board, to perform a plain ministerial duty owed to him to reopen and consider anew his classification. When this controversy is considered as an invocation of jurisdiction under section 1361, I think some of the complications that have divided the court are avoided, or at least more easily resolved.

To begin with, I find no conflict between the above quoted grant of judicial power in section 1361 and the restrictive requirement of section 10(b) (3) of the Military Service Act of 1967 that no "judicial review shall be made of the classification or processing of any registrant * * * except as a defense to a criminal prosecution * * *" 50 U.S.C. App. § 460(b) (3) (Supp. IV 1969). Conceptually, mandamus is not "judicial review." To require a selective service board to perform a plain ministerial duty to reopen and consider anew what a registrant's classification should be, is not to engage in "judicial review" of any classification. Rather, it is an exercise of a special and circumscribed power Congress has conferred upon the courts to protect the individual against arbitrary refusal to perform a public duty owed to the individual. Thus, I find it unnecessary to consider the interrelations of the *Oestereich, Breen* and *Clark* cases to which other members of the court have directed their attention. Oestereich v. Selective Service System Local Board, 1968, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402; Breen v. Selective Service Local Board, 1970, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653; Clark v. Gabriel, 1968, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418.

It remains to consider whether the plaintiff in this case adequately asserts an arbitrary refusal to perform in the plaintiff's interest such a duty as section 1361 contemplates. The complaint alleges that the board was under such a duty to reopen the registrant's case and consider his status anew. If the regis-

trant made a request for reclassification "accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in registrant's classification," 32 C.F.R. § 1625.2, reopening was mandatory. Full documentation of this proposition appears in Judge Gibbons' opinion and need not be repeated here. However, it bears repeating that the Supreme Court has asserted that "[t]hough the language of 32 CFR § 1625.2 is permissive, it does not follow that a Board may arbitrarily refuse to reopen a registrant's classification." Mulloy v. United States, 1970, 398 U.S. 410, 415, 90 S.Ct. 1766, 1770, 26 L.Ed.2d 362. It is just such arbitrary refusal to act in a complainant's interest that the present complaint asserts and section 1361 is designed to correct.

Thus it seems clear to me that if the district court had considered only the complaint, the granting of the motion to dismiss would have been error. But before acting on the motion, the court, *sua sponte*, suggested that the plaintiff disclose "what you are going to prove on the merits." The plaintiff acquiesced and introduced into the record a number of letters from the files of the local board. I am not prepared to say that the court erred in considering these letters as if they had been incorporated in the complaint. However, the letters do not show that the registrant had failed to supply the board with new information "which, if true, would justify a change in the registrant's classification," 32 C.F.R. § 1625.2. They do show that the registrant requested a III-A reclassification because his wife was pregnant and his induction "would work a great deal of hardship on my wife and child." In addition, the board was supplied with written statements of the registrant's wife and her physician certifying her pregnancy and specifying serious physical and emotional disorders that she was experiencing. I do not see how it could reasonably be contended that these facts would not have "justified" reclassifica-

tion upon the basis of extreme hardship, and no more than that is required to make reopening, with its attendant procedural rights, mandatory under 32 C.F.R. § 1625.2. Thus, the material submitted by the plaintiff amplified and in no way contradicted the allegations of his complaint.

Apart from the showing made by the registrant on his claim of extreme hardship, Judge Freedman has taken the position that the registrant's representations to the board, if properly proved to be true, would have justified reclassification on the basis of fatherhood.[1] My difficulty with this contention arises out of the fact that the registrant had been classified II-S, and 32 C.F.R. § 1622.30 explicitly precludes a deferment of a registrant on the basis of fatherhood after he has been classified II-S. There is a substantial question of interpretation, upon which reasonable men may differ, whether this restriction covers graduate, as well as undergraduate, II-S classifications. *See* Gregory v. Hershey, E.D.Mich.1969, 311 F.Supp. 1. Mandamus under Section 1361 should be confined strictly to arbitrary action and I am not prepared to say that the board's reading of the regulation as covering every II-S classification was arbitrary, though upon judicial review, as distinguished from mandamus, that interpretation of the regulation might well be reversed as erroneous. *Cf.* Guffanti v. Hershey, S.D.N.Y.1969, 296 F.Supp. 553.

Accordingly, I vote to reverse the judgment and require a denial of the board's motion to dismiss the complaint solely because the complaint, on its face and as supplemented, adequately asserts an arbitrary refusal to reopen to consider the registrant's extreme hardship claim.

ALDISERT, Circuit Judge (dissenting).

I am not persuaded that any of the multifaceted approaches suggested in the various plurality opinions justify reversal of the district court. I am moved, therefore, to add to the existing proliferation of views a rather lengthy expression of my own position.

In my view, the dispositive question in this appeal is whether the local board's refusal to reopen and consider appellant's requested III-A deferment involved determinations of fact and an exercise of discretion or whether, instead, it was based on non-discretionary standards mandated by statute or regulation. If the former, this civil action for pre-induction review of the board's decision should be barred by the jurisdictional limitation of Section 10(b) (3) of the Military Service Act of 1967, 50 App. U.S.C. § 460(b) (3) (Supp. IV 1969), which provides there shall be no pre-induction review "of the classification or processing of any registrant."[1] If the latter, review should be permitted at this time under judicially recognized exceptions to the statute. Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968); Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970). And at the risk of appearing meretricious, I feel compelled, in light of the approaches taken by several of my brethren, to point up the obvious: our decision, as an appellate tribunal, must be based on the record compiled in the district court.

Alleging federal question jurisdiction, 28 U.S.C. § 1331, appellant sought to enjoin his local board from issuing an order for induction and requested, in the alternative, a reopening of his classifica-

1. If the physician's representations concerning the wife's pregnancy were less detailed than 32 C.F.R. § 1622.30 (c) (3) required, amplification could and should have been sought after reopening.

1. No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under § 12 of this title * * * after the registrant has responded either affirmatively or negatively to an order to report for induction.

  *   *   *   *   *

tion through mandamus against a federal official, 28 U.S.C. § 1361. The board responded with a motion to dismiss, based in part on the contention that the district court lacked jurisdiction over the subject matter. Appellant appealed from the district court's dismissal of the complaint "pursuant to Fed.R.Civ.Pro. 12(b) (1)."[2]

The gravamen of appellant's complaint is that he was denied due process in the consideration of his request for reopening. He argues that he established a *prima facie* case for a III-A deferment, based on "nonfrivolous allegations of facts that have not been previously considered by his Board, and that, if true, would be sufficient under regulation or statute to warrant granting the requested reclassification." Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970). He correctly contends that "where the registrant has set out new facts which establish a prima facie case for a new classification, a Board must reopen to determine whether he is entitled to that classification," *Mul-*

*loy, supra,* and once the Board reopens, it is required by the regulations to "consider the new information which it has received [and to] again classify the registrant in the same manner as if he had never been classified." 32 C.F.R. § 1625.11. This new classification would afford the registrant "the right * * of appearance * * * and appeal as in the case of an original classification." 32 C.F.R. § 1625.13. It is the denial of a reopening and the resulting foreclosure of administrative review which appellant seeks to remedy by this action for an injunction or writ of mandamus.

Our task as an appellate court should be to decide whether the court below was correct—based on the facts before it—in holding that it was without jurisdiction to entertain appellant's action. We should, of course, be guided by the presumption that a federal court lacks jurisdiction until it has been demonstrated that jurisdiction exists,[3] and by the recognition that Congress has the power to give, withhold, and restrict the jurisdiction of the lower federal courts.[4] My

2. Appellee's motion to dismiss was based on Fed.R.Civ.Pro. 12(b) (1), (2), (3), (5), and (6). Since it was, in part, grounded on subsection (6) (failure to state a claim upon which relief can be granted), it could have been treated as one for summary judgment subject to the provisions of Fed.R.Civ.Pro. 56. This is so because the court considered not only the pleadings but also eight separate exhibits which appellant introduced in support of his contention that entitlement to III-A deferment had been established as a matter of law. It was not improper for the court to have considered the exhibits in conjunction with its consideration of the Rule 12(b) (1) motion. Wide leeway is accorded the courts in this circuit in considering all matters of record relevant to subject matter jurisdiction. See, e. g., Berkowitz v. Philadelphia Chewing Gum Corp., 303 F.2d 585 (3 Cir. 1962).

From the transcript of the May 19, 1969, hearing, the following colloquy appears:

> THE COURT: I think I understand your position on the motion to dismiss, and I will take the matter under advisement.
>
> In the meantime, I suggest that you complete your record as to what you

are going to prove on the merits.

> MR. EGNAL: Your Honor, what I have here are the seven letters.

Eight, not seven, letters were then introduced, without objection, as plaintiff's exhibits. Certain statements purporting to be additional factual background were then given by plaintiff's counsel who carefully and properly explained:

> MR. EGNAL: * * * The factual recitation that I just gave you is not proved. I don't know what Mr. Wright [government counsel] wants—I mean the proof would be in the file he has.

3. Turner v. President, Directors and Company of Bank of North America, 4 Dall. 8, 1 L.Ed. 718 (1799) ; WRIGHT, LAW OF FEDERAL COURTS, (2nd Ed. 1970) § 7, at 15.

4. Ex Parte McCardle, 7 Wall. 506, 19 L. Ed. 264 (1868). In Cary v. Curtis, 3 How. 236, 245, 11 L.Ed. 576 (1845), the Court declared:

> [T]he judicial power of the United States, although it has its origin in the Constitution, is (except in enumerated instances, applicable exclusively to this court) dependent for its distribution and organization, and for the modes of its exercise, entirely upon the action

principal line of inquiry concerns, therefore, the applicability of Section 10(b)(3) and the effect of recent Supreme Court decisions construing the statute.

The record below discloses that appellant requested and received a II-S classification (student deferment) after July 1, 1967.[5] In June, 1968, he was classified I-A and unsuccessfully appealed to the state board on the ground that he was entitled to I-O (conscientious objector) status. While this appeal was pending before the state appeals board, however, appellant by letter of November 17, 1968, notified his local board (1) that his wife was pregnant, and (2) that he wished "to appeal [his] classification of I-A on July 11, 1968," for the reason that he was "entitled to the classification of III-A (3A)."

On November 22, a physician notified the board that he had examined appellant's wife and made a "presumptive diagnosis of pregnancy." Mrs. Hunt wrote on December 24 requesting the III-A reclassification for her husband, indicating that she was pregnant, that she had a "number of rectal problems." "a spastic condition of the bowel tract." "severe abdominal cramps and extreme tension resulting from my husband's dealing with the Selective Service System," and that "the nervous tension which has resulted from the potentiality of his being drafted led me to seek professional help." A second physician told the board that he had been treating Mrs. Hunt "since August 1, 1968, with irritable colon syndromes, along with anorectal pathology," and that she had undergone a hemorrhoidectomy on September 18, 1968. Still a third physician communicated with the board on December 30, 1968, diagnosing a positive pregnancy with an expected date of confinement of June 24, 1969. The first doctor wrote again the next day advising that Mrs. Hunt was "under emotional distress as a result of her concern over her husband's possible induction."

Following the denial on appeal of his request for a I-O, and after the issuance of a new I-A classification, appellant wrote the board on April 18, 1969: "I wish to appeal my classification I-A dated April 7, 1969. I request you reclassify me in category III-A on the ground that:

"1   I am soon to be a father

"2   If I were inducted it would work a great deal of hardship on my wife and child."

The local board acknowledged the receipt of "supporting documents" for the III-A claim from appellant's wife and her physicians, but on May 2, 1969, advised him that, having "considered the information in your file submitted while your file was at the Appeal Board and since it has been returned," it "did not feel the information warranted reopening your case. Since you had requested and received a II-S deferment after July 1, 1967, you are not entitled to a III-A for fatherhood."

Initially, I must reject the position, which I once shared,[6] that the Military Selective Service Act of 1967 mandates an absolute right of administrative appeal from a local board's refusal to reopen and consider a request for reclassification, irrespective of the quantum of evidence presented to the board. 50 App. U.S.C. § 460(b)(3) provides:

  \*   \*   \*   Such local boards, or separate panels thereof each consisting of three or more members, *shall, under*

---

of Congress, who possesses the sole power of treating the tribunals (inferior to the Supreme Court), for the exercise of the judicial power, and of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good.

See cases collected in WRIGHT, *supra*, § 10, at 25 n. 28.

5. The record does not indicate whether this student deferment was pre- or post-baccalaureate. See 32 C.F.R. 1622.25, 1622.26.

6. Clark v. Commanding Officer, 3 Cir., 427 F.2d 7, 11–12 (1970) (Aldisert, J., concurring).

*rules and regulations prescribed by the President,* have the power within the respective jurisdictions of such local boards to hear and determine, *subject to the right of appeal to the appeal boards herein authorized,* all questions or claims with respect to inclusion for, or exemption or deferment from, training and service * * *. *The decisions of such local board shall be final except where an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe.* (Emphasis supplied.)

A fair reading of the statute compels the conclusion that the right to an administrative appeal from a decision of a local board is not absolute but is dependent upon the existence of regulations conferring such a right. The statute merely *authorizes* the creation of rights of appeal and provides that appeals which are permitted by regulation shall be "taken in accordance with such rules and regulations as the President may prescribe." In the absence of provisions for an appeal, "the decisions of * * * local board shall be final."

Clearly the regulations themselves are not open to the sweeping interpretation urged by appellant, particularly in light of *Mulloy, supra,* which established the necessity of proving a prima facie case as a prerequisite to reopening. Furthermore, the due process attacks on the regulations, based on their failure to provide for an appeal from a refusal of a local board to reopen,[7] have proved unsuccessful, and the constitutionality of

the regulations has been sustained. United States ex rel. La Charity v. Commanding Officer, 142 F.2d 381, 383 (2 Cir. 1944); United States v. Beaver, 309 F.2d 273, 277 (4 Cir. 1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); Boyd v. United States, 269 F.2d 607, 611 (9 Cir. 1959); Klubnikin v. United States, 227 F.2d 87, 90–91 (9 Cir. 1955), cert. denied, 350 U.S. 975, 76 S.Ct. 453, 100 L.Ed. 846 (1956).

In determining the basis for the local board's refusal to reopen and consider appellant's request for the III-A classification—a determination that is critical to the jurisdictional issue of pre-induction review—separate attention must be given the two subsections of 32 C.F.R. § 1622.30.[8] Subsection (a) deals with consequences of fatherhood; subsection (b), with hardship.

I turn first to the hardship claim based on § 1622.30(b). For appellant to prevail in seeking pre-induction review, he must, as I have indicated above, overcome Section 10(b) (3), a statute of jurisdictional limitation which has already withstood constitutional attack. The Supreme Court has found "no constitutional objection to Congress' thus requiring that assertion of * * * claims * * * be deferred until after induction * * * or until defense of the criminal prosecution which would follow should he press his objections to his classification to the point of refusing to submit to induction. Estep v. United States, 327 U.S. 114 [66 S.Ct. 423, 90 L.Ed. 567] (1946); Falbo v. United States, 320 U.S. 549 [64 S.Ct. 346, 88

---

7. We are not presented in this case with the question of the right to an appeal from a *de facto* reopening clothed in the guise of a refusal to reopen. See Miller v. United States, 388 F.2d 973 (9 Cir. 1967).

8. *32 C.F.R. § 1622.30 Class III–A: Registrant With a Child or Children; and Registrant Deferred by Reason of Extreme Hardship to Dependents.*—(a) in Class III–A shall be placed any registrant who has a child or children with whom he maintains a bona fide family relationship in their home and who is not

a physician, dentist or veterinarian, or who is not in an allied specialist category * * *, except that a registrant who is classified in Class II–S after the date of enactment of the Military Selective Service Act of 1967 shall not be eligible for classification in Class III–A under the provisions of this paragraph.

(b) In Class III–A shall be placed any registrant whose induction into the armed forces would result in extreme hardship (1) to his wife, divorced wife, child, parent, grandparent, brother, or sister who is dependent upon him for support, * * *

L.Ed. 305] (1944)." Clark v. Gabriel, 393 U.S. 256, 259, 89 S.Ct. 424, 426, 21 L.Ed.2d 418 (1968).

To be sure, this section has not received a literal interpretation. Exceptions to the Congressional restriction were found in Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), and Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970). But though it is true that *Oestereich* and *Breen* have permitted pre-induction review, they must be read in conjunction with Clark v. Gabriel, *supra,* the second of the Supreme Court's pre-induction review trilogy which was decided on the same day as *Oestereich.* In *Gabriel,* the Court distinguished a case in which the registrant "was by statute unconditionally entitled to exemption," as in *Oestereich,* from one which "inescapably involves a determination of fact and an exercise of judgment," 393 U.S. at 258, 89 S.Ct. at 426 and declared that if a case fits within the latter category, there may be no pre-induction review. Thus, jurisdiction to entertain appellant's complaint should depend on whether the district court's resolution of his claim to a *prima facie* case and entitlement to reopening entails a "determination of fact and an exercise of judgment," as in *Gabriel,* or whether it requires a ruling on an alleged violation of a right over which the board has no prerogative, as in *Oestereich* and *Breen.*

Procedurally, the *prima facie* case is a standard designed to determine whether the quantum of evidence presented is sufficient to support a finding. One charged with the duty to decide whether such a case has been made out must accomplish an exquisite intertwining of functions. He must act not only as a fact-finder, but also as an evaluator of those facts. The discretion utilized in the evaluating process is so refined that the determination of a *prima facie* case in civil and criminal trials is exclusively a judicial function. In selective service cases, a *prima facie* case is present "if a registrant has presented facts which, if true and uncontradicted by other information contained in the file, would be sufficient under the regulations to warrant granting his requested classification." United States v. Burlich, 257 F. Supp. 906, 911 (S.D.N.Y.1966).

But the Supreme Court has clearly said that there may be no pre-induction review where it is necessary to review "the quantum of evidence necessary to sustain a Board's classification," Oestereich v. Selective Service System Local Board, *supra,* 393 U.S. at 238 n. 7, 89 S.Ct. at 417, or, as noted before, where the action of the board "inescapably involves a determination of fact and an exercise of judgment," Clark v. Gabriel, *supra,* 393 U.S. at 258, 89 S.Ct. at 426. Consistent with this approach, the Court in *Breen* distinguished between "discretionary standards" and "explicit requirements for student deferments."

This court's decision in Bucher v. Selective Service System, Local Boards Nos. 2, etc., 421 F.2d 24 (3 Cir. 1969), did not enumerate different standards. We held that Section 10(b) (3) does not bar pre-induction judicial review where the regulations and the classification procedures pursuant thereto are challenged "on the grounds that they lack statutory authorization, and/or violate constitutional rights." We were careful to add that "[t]he Section bars pre-induction review only where there is a challenge to the System's resolution of factual questions in the classification or processing of a draft registrant." *Id.* at 27.

I cannot conclude that the circumstances of Mrs. Hunt's condition amounted to hardship as a matter of law. The assessment and evaluation of these circumstances—supported by letters referring to her rectal and bowel problems, abdominal cramps, tension and nervousness because of her husband's impending induction—were the responsibility of the local board, and it was for the board to decide whether such facts constituted a *prima facie* case of hardship justifying a reopening. This decision "inescapably

involve[d] a determination of fact and an exercise of judgment," properly left to the local board. Clark v. Gabriel, *supra*, 393 U.S. at 258, 89 S.Ct. at 426. To accept the position of Judge Gibbons and sanction pre-induction review of this decision would be to permit "precisely the kind of 'litigious interruptions of procedures to provide necessary military manpower' (113 Cong.Rec., 15426 (report by Senator Russell on Conference Committee action)) which Congress sought to prevent when it enacted § 10(b) (3)." Clark v. Gabriel, *supra*, 393 U.S. at 258, 89 S.Ct. at 426.

Moreover, I detect no inclination by the Supreme Court to restrict the holding of Clark v. Gabriel and to extend the exceptions of *Oestereich* and *Breen*. Indeed, in *Mulloy*, the Court, citing Clark v. Gabriel, re-emphasized the policy of a "narrowly limited scope of judicial review." In view of this strong and continuing policy, I am unable to accept Chief Judge Hastie's suggestion that Section 10(b) (3) can be avoided merely by the use of mandamus. I am convinced that the congressional objective was to minimize "litigious interruptions" of selective service procedures, whether the interruption be cast in terms of a request for an injunction or for a writ of mandamus.

It may be suggested that appellee's failure to file an answer amounted to an admission of the complaint's averments, thus obviating the need for factual findings by the district court and removing the Clark v. Gabriel issue from the case. Paragraph 6 of Complaint alleged:

> While the appeal was pending, plaintiff notified defendant of changed conditions which, prima facie, entitled plaintiff to a 3-A deferment.

I find no merit in this technical argument. First, no answer was required since appellee's motion to dismiss, served within the 60 day period and raising the Rule 12(b) defenses, was granted. And, although for the purposes of appellee's motion to dismiss—asserting as one ground the failure to state a claim under Rule 12(b) (6)—"the well-pleaded material allegations of the complaint [were] taken as admitted," "conclusions of law or unwarranted deductions of fact [were] not admitted." 2A MOORE'S FEDERAL PRACTICE § 12.08 at 2266–69. It is clear that the existence *vel non* of a *prima facie* case was the ultimate issue that appellant sought to establish, requiring the application of relevant law to given facts. This being so, it cannot fairly be said that appellant's mere allegation of a *prima facie* case was taken as admitted by appellee.

Turning now to the fatherhood claim, it is arguable that 32 C.F.R. § 1622.30(a) establishes standards for the fatherhood deferment which are explicit and non-discretionary, and which can be applied in the absence of extensive factual findings. In United States v. Worstell, 419 F.2d 762 (3 Cir. 1969), we held that the II-S classification establishes a *right* to deferment for eligible registrants which may not be refused or withdrawn at the discretion of the local board. This right was analogized to the right to a IV-D ministerial exemption, the denial of which was subject to pre-induction review in *Oestereich, supra*. The Supreme Court subsequently made it clear in *Breen, supra*, that the II-S deferment is not to be treated differently from the IV-D exemption for the purposes of pre-induction review. In Bucher v. Selective Service System, Local Board Nos. 2 etc., *supra*, 421 F.2d at 34, we deemed it unnecessary, however, to decide whether the III-A classification "achieve[s] the dimension of statutory deferments akin to the statutory deferment status of the II-S (student) classification dealt with in *Worstell*," since the invalidity of the delinquency reclassifications created the entitlement to pre-induction review despite the limitations of Section 10(b) (3). Here, too, I find it unnecessary to decide whether the refusal of a fatherhood deferment—like the denial of a II-S—is open to pre-induction review. Even in the case of a non-discretionary deferment, the registrant must, in order to obtain review,

show the court that his status formally complies with that defined by the regulation or statute. A bare allegation that the Board has denied him that to which he is entitled is insufficient to overcome the jurisdictional barrier. In this case, appellant's charge that the board acted illegally in rejecting the fatherhood deferment was. on its face, insufficient.

Section 1622,30(a) · provides that "a registrant who is classified in Class II-S after the date of enactment of the Military Selective Service Act of 1967 (June 30, 1967) shall not be eligible for a classification in Class III-A under this [fatherhood] paragraph." Evidence introduced by appellant himself demonstrated his ineligibility, establishing that he "requested and received a II-S deferment after July 1, 1967." Moreover, I find no occasion to consider the correctness of Gregory v. Hershey, 311 F.Supp. 1 (E.D. Mich.S.D.1969), which suggests that the III-A is barred only by a II-S received as an undergraduate and not as a graduate student, because there was no evidence in the record before the district court that appellant's II-S was obtained at a post-baccalaureate stage.

Judges Freedman, Seitz, and Adams do not, however, confine their review to that record. Instead, they rest their conclusions on information that was presented for the first time at oral argument before *this* court. "[T]he decisive facts which establish his [fatherhood] claim are now acknowledged. * * * This factor is not in dispute. It was agreed by the parties at bar that registrant's II-S classification was based on his status as a post-baccalaureate student." I agree with Judge Gibbons that we cannot "assume original jurisdiction rather than appellate jurisdiction to decide the fatherhood issue which was never decided by the district court." Im-

plicit in the grant of jurisdiction to this court to review decisions of the district courts, 28 U.S.C. §§ 1291 and 1292, is the basic concept that our scope of review is limited to matters of record. Fed.R.App.Pro. 10.

Therefore, even were I to assume the validity of the *Gregory* distinction, I would hold that appellant failed in the trial court to sustain the burden of proving the post-baccalaureate II-S status and, consequently, immunity from military service.

In sum, I would hold that appellant did not establish the subject matter of jurisdiction of the district court because he failed to surmount the jurisdictional hurdle of Section 10(b) (3). He presented a request for a III-A hardship case which "inescapably involve[d] a determination of fact and an exercise of judgment" by the local board, and not an issue capable of framing as a purely legal question involving an alleged "departure by the Board from its statutory mandate." *Oestereich, supra,* 393 U.S. at 238, 89 S.Ct. at 416. What appellant presented to the district court was a question inextricably tied to a special factual context, the resolution of which was discretionary with the local board and mandated by neither statute nor regulation. Appellant was not deprived of his hardship deferment in a "blatantly lawless manner." And in asserting the right to a fatherhood deferment, he failed to demonstrate to the court below that his status was that designated by the regulation.

For all of the foregoing reasons, I would affirm the judgment of the district court.

VAN DUSEN, Circuit Judge, joins in this dissent.